**Tengiz SEVOIAN, Petitioner,**

v.

**John ASHCROFT,\* Attorney General of the United States, Respondent.**

**No. 00–2369.**

United States Court of Appeals, Third Circuit.

Argued April 5, 2001.

Filed May 8, 2002.

---

\* Substituted for Janet Reno pursuant to Fed. R.App. P. 43(c)(2).

Davis Polk & Wardwell, James I. Rim (Argued), New York, NY, for Petitioner.

David W. Ogden, Assistant Attorney General, Civil Division, Emily Anne Radford, Assistant Director, Papu Sandhu (Argued), Senior Litigation Counsel, Terri J. Scadron, John M. McAdams, Jr. Office of Immigration Litigation Civil Division, Department of Justice, Washington, D.C., for Respondent.

Before: SCIRICA, AMBRO, and GIBSON,** Circuit Judges.

## OPINION OF THE COURT

JOHN R. GIBSON, Circuit Judge.

Tengiz Sevoian, a citizen of the Republic of Georgia, petitions for review of the refusal of the United States Board of Immigration Appeals to reopen his removal proceeding. Sevoian originally sought asylum and withholding of deportation on the grounds that he would face religious and ethnic persecution if returned to Georgia. After a hearing, the Immigration Judge and then the Board of Immigration Ap-

** The Honorable John R. Gibson, United States Court of Appeals for the Eighth Circuit, sitting by designation.

peals denied those claims. Sevoian then moved to reopen his case in order to raise a new claim: that he is entitled to withholding of removal because his deportation would violate the United Nations Convention Against Torture as adopted by the United States. The Board denied Sevoian's motion to reopen, concluding that he had failed to establish a prima facie case for relief under the Convention Against Torture and its implementing regulations. Sevoian's petition for judicial review of that decision raises a threshold question concerning the proper standard of review for a denial, on prima facie case grounds, of a motion to reopen immigration proceedings under the Convention. We conclude that we must review the Board's ultimate decision to determine whether it was arbitrary, capricious, or an abuse of discretion, and any findings of fact to determine whether they were supported by substantial evidence. Applying these standards, we deny Sevoian's petition.

Sevoian is a member of the Kurdish ethnic minority in Georgia and follows the Yezidi religion, a small Kurdish sect centered in Iraq and the Black Sea countries. *See A New Dictionary of Religions* 565–66 (2d ed.1995). In 1994 and 1995, Sevoian received draft notices from the Georgian Army ordering him to report for military service. He later testified to the Immigration Judge that he feared reporting for military service because Kurdish soldiers were often beaten by Georgian soldiers and forced to participate in atrocities in Georgia's ongoing ethnic civil war in the Abkhazia region. Sevoian stated that in 1995 he fled his home in Tbilisi to avoid serving in the army, hiding himself at his uncle's house in a small rural village. The Georgian authorities opened a criminal proceeding against Sevoian for evasion of military service. Sevoian remained in partial seclusion in his uncle's village until 1997, when Sevoian decided that military patrols were drawing too near to his hiding place. He then fled Georgia to avoid conscription. Sevoian's uncle bribed a Georgian official to obtain a passport, and bribed an official at the airport to get Sevoian past a military checkpoint.

Sevoian entered the United States in late September, 1997, with a nonimmigrant visa that permitted him to stay until October 31, 1997. Intending to settle in Canada, he traveled to that country and applied for refugee status, but his claims were denied. The Canadian government deported Sevoian to the United States on June 11, 1998. The Immigration and Naturalization Service then promptly commenced its own removal proceeding against Sevoian for overstaying his visa. *See* 8 U.S.C. § 1227(a)(1)(B) (Supp. IV 1998).

Sevoian conceded that his visa was expired, making him "removable" under § 1227(a)(1)(B). He applied for asylum in the United States on the ground that he faced religious and ethnic persecution in Georgia as a Kurd and a Yezid, and brought a second claim for mandatory withholding of removal on the same ground. Sevoian claimed to have experienced incidents of abuse and discrimination in Georgia based on his ethnic and religious background, as part of an increase in nationalist sentiment among ethnic Georgians after Georgia's independence from the former Soviet Union. He claimed that these incidents of harassment, together with the likelihood that he would be physically abused by Georgian police if he were arrested for evading the draft, added up to a well-founded fear of future persecution if he returned to Georgia. Sevoian testified at his asylum hearing and entered a number of exhibits to throw light on his claims, including the State Department Country Report on human rights conditions in Georgia and similar

materials prepared by non-governmental human rights organizations.

The Immigration Judge denied Sevoian's claims for relief. She held that Sevoian had failed to meet his required burden of proof to show either past persecution or a well-founded fear of future persecution. As a threshold matter, the Judge expressed some doubts about Sevoian's credibility when testifying. She declined to enter an adverse credibility finding, but noted several gaps or inconsistencies in his testimony, and suggested that she did not find Sevoian "completely credible." Next, the Judge reasoned that the descriptions of human rights problems in Georgia found in the State Department report did not support Sevoian's claims of persecution. Rather, they showed that nationalist sentiment in Georgia had declined significantly since the early 1990s and was no longer a part of government policy. She further reasoned that the possibility that Sevoian would be punished for illegally evading the draft if he returned to Georgia did not, without more, support his claims of persecution.

The Board of Immigration Appeals affirmed, holding that Sevoian had failed to meet his evidentiary burden for establishing a well-founded fear of persecution. The Board noted that persecution for failure to serve in the military is a difficult claim to establish; it may succeed in rare cases when punishments for the crime are disproportionately severe, or when conscripts are required to engage in inhuman acts or atrocities as a necessary part of military service.

Sevoian then filed a motion requesting the Board to reopen his case to consider whether he was entitled to withholding of removal on a basis he had not asserted during his removal hearing: that deporting him to Georgia would violate the Convention Against Torture. Sevoian's motion to reopen asserted that he faced imprisonment in Georgia due to his failure to serve in the military and that Georgian police commonly used torture against suspects and prisoners. Therefore, Sevoian argued, if he returned to Georgia he was likely to be tortured in violation of the Convention.

The Board denied the motion to reopen, holding that Sevoian had failed to make out a prima facie case for relief, because insufficient evidence supported his claim that he would face torture in Georgia.[1] It concluded that the State Department report, which formed part of the record below, indicated that official torture of prisoners was used "for the most part" to extract confessions. Therefore, the Board reasoned, torture would not be used in a case involving Sevoian, who had simply avoided conscription. Hence, Sevoian had not met his burden to establish a prima facie case for relief under the Convention.

Sevoian petitioned this court for review of the Board's denial of reopening. *See Khourassany v. INS,* 208 F.3d 1096, 1100 (9th Cir.2000) (holding that the Board's denial of a motion to reopen is reviewable by the federal courts of appeals).

## I.

### A.

The Supreme Court has identified three principal grounds on which the Immigration Judge or the Board may deny a motion to reopen immigration proceedings. First, it may hold that the movant has failed to establish a prima facie case for the relief sought—the ground at issue

---

1. The Board did not address whether Sevoian had met the procedural requirement of presenting new, material evidence to support his motion for reopening, as required by 8 C.F.R. § 3.2(c).

here. Second, it may hold that the movant has failed to introduce previously unavailable, material evidence that justifies reopening, as required by regulation. *See* 8 C.F.R. § 3.2(c). Third, in "cases in which the ultimate grant of relief [being sought] is discretionary (asylum, suspension of deportation, and adjustment of status, but not withholding of deportation)," the Board can "leap ahead ... over the two threshold concerns (prima facie case and new evidence/reasonable explanation) and simply determine that even if they were met, the movant would not be entitled to the discretionary grant of relief." *INS v. Abudu*, 485 U.S. 94, 105, 108 S.Ct. 904, 99 L.Ed.2d 90 (1988).

■ The preliminary question before this court is what standard of review applies to a denial of reopening on the first of the three grounds just listed—failure to make a prima facie case for relief. The Supreme Court has held that denials on the second and third grounds above must be reviewed for abuse of discretion. *Id.* But it has avoided deciding what standard courts should apply to denials based on failure to make a prima facie case. *See INS v. Doherty*, 502 U.S. 314, 323, 112 S.Ct. 719, 116 L.Ed.2d 823 (1992); *Abudu*, 485 U.S. at 100–04 & nn. 6–9, 108 S.Ct. 904.[2]

Several circuits have applied abuse of discretion review to denials of reopening for failure to establish a prima facie case. *See Mansour v. INS*, 230 F.3d 902, 906–07 (7th Cir.2000); *M.A. v. INS*, 899 F.2d 304 (4th Cir.1990) (en banc); *Bahramnia v.

INS*, 782 F.2d 1243 (5th Cir.1986). Two other circuits have recently reviewed such decisions for both substantial evidence and an abuse of discretion, in cases involving the prima facie case requirement for reopening under the Convention Against Torture. In *Najjar v. Ashcroft*, 257 F.3d 1262 (11th Cir.2001), the Eleventh Circuit held that the Board of Immigration Appeals' denial on prima facie case grounds of a motion for reopening under the Convention Against Torture was "supported by substantial evidence and well within the broad discretion of the [Board]." *Id.* at 1304. So also in *Kamalthas v. INS*, 251 F.3d 1279 (9th Cir.2001), the Ninth Circuit reviewed for abuse of discretion the Board's decision to deny reopening for failure to make out a prima facie case, while reviewing its factual findings for substantial evidence. *See id.* at 1281.

This court has not yet decided the issue. *Etugh v. INS*, 921 F.2d 36, 38 (3d Cir. 1990).[3] We are persuaded, as we explain below, that the Board's findings of fact should be reviewed for substantial evidence, while its ultimate decision to reject Sevoian's motion to reopen should be reviewed for an abuse of discretion.

### B.

In some cases the Board or Immigration Judge's decision whether a given motion to reopen raises a prima facie case may turn on a discrete issue of fact. Recently, in reviewing the Board's determination on the merits that an alien was not

---

**2.** The Court's opinion in *Abudu* went to some length to avoid this issue. Though both the questions presented and the opinion of the court of appeals below stated that the sole issue in the case was whether the petitioner had made out a prima facie case, the Court in *Abudu* concluded that the issue was not before it. *See* 485 U.S. at 100–04 & nn. 6–9, 108 S.Ct. 904.

**3.** However, in *Katsis v. INS*, 997 F.2d 1067, 1071 n. 3 (3d Cir.1993), this court stated, in conceded dictum, that it would apply abuse of discretion review to an agency decision to deny, for failure to make a prima facie case, a motion to reopen a removal proceeding in which an alien sought a discretionary waiver of deportation.

"firmly resettled" for purposes of the asylum laws, this court held that factual findings such as "firm resettlement" are reviewed using the deferential version of the substantial evidence standard set out in *INS v. Elias–Zacarias*, 502 U.S. 478, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992). *See Abdille v. Ashcroft*, 242 F.3d 477, 483–84 (3d Cir.2001). Under this standard, an alien seeking judicial reversal of findings of fact by an immigration agency must show that the evidence was "so compelling that no reasonable factfinder could fail to find" in his favor. *Elias–Zacarias*, 502 U.S. at 483–84, 112 S.Ct. 812. *Abdille* points to using the same standard to review agency factfinding in other immigration proceedings, such as the Board's consideration of Sevoian's motion to reopen.

Congress has also spoken on this issue. The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (which is often referred to as "IIRIRA," but we "believe clarity is served by referring to it . . . as the Reform and Responsibility Act," *Pinho v. INS*, 249 F.3d 183, 186 (3d Cir. 2001)) requires federal courts in proceedings commenced after April 1, 1997, to review findings of fact by an immigration agency in a final order of removal to determine whether "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B) (2000). The Reform and Responsibility Act codifies the language the Supreme Court used in *Elias–Zacarias* to describe the substantial evidence standard in immigration cases. *See* 502 U.S. at 483–84, 112 S.Ct. 812.

The Board's denial of Sevoian's motion to reopen is a final order of removal for purposes of § 1252(b)(4)(B) of the Reform and Responsibility Act. *See Khourassany*, 208 F.3d at 1100 (accepting INS's contention that the Board's denial of a motion to reopen asserting a claim under the Convention is a final order of removal). Thus, there is also a strong statutory ground for applying substantial evidence review to findings of fact that are the basis for the Board's denial of Sevoian's motion to reopen.

Review of the agency's ultimate decision to grant or deny reopening involves separate considerations. Sevoian argues that we should apply de novo review to the Board's ultimate decision, while the government argues that abuse of discretion should be the standard.[4] We observe at the outset that motions to reopen immigration proceedings are "traditionally disfavored . . . for the same reason we disfavor

---

4. Sevoian and the government recapitulate arguments that were presented, but not resolved, in this court's earlier decision of *Etugh v. INS*, 921 F.2d 36 (3d Cir.1990). Both parties' arguments, however, have been eroded by statutory and case law developments. Like Etugh, Sevoian suggests that the Ninth Circuit case of *Ghadessi v. INS*, 797 F.2d 804 (9th Cir.1986), provides precedential support for exercising de novo review here. However, in *Ghadessi* there were three divergent opinions from the judges who heard the case. Whatever *Ghadessi* stands for, it has been superseded by the Ninth Circuit's recent decision in *Kamalthas v. INS*, which applied the abuse of discretion standard to the Board's ultimate decision in a prima facie case determination. *See* 251 F.3d at 1281.

The government, in turn, emphasizes the Fourth Circuit's decision in *M.A. v. INS*, 899 F.2d 304 (4th Cir.1990) (en banc), in arguing for abuse of discretion review. However, one important reason offered in *M.A.* for adopting abuse of discretion review is no longer valid. The en banc majority in *M.A.* emphasized that "the immigration statutes do not require or even contemplate reopening procedures"; rather, reopening was created by the INS in the exercise of its discretion to administer the statutes. 899 F.2d at 307. The 1996 enactment of the current 8 U.S.C. § 1229a(c)(6) changed this aspect of the legal landscape by creating a statutory provision for motions to reopen.

'petitions for rehearing and motions for a new trial,'" namely, the need for finality in litigation. *Xu Yong Lu v. Ashcroft*, 259 F.3d 127, 131 (3d Cir.2001) (quoting *Doherty*, 502 U.S. at 323, 112 S.Ct. 719). There is a "strong public interest in bringing litigation to a close as promptly as is consistent with" a fair opportunity to present claims. *Abudu*, 485 U.S. at 107, 108 S.Ct. 904. This is particularly true when dealing with motions to reopen removal proceedings, since "as a general matter, every delay works to the advantage of the deportable alien who wishes merely to remain in the United States." *Xu*, 259 F.3d at 131 (quoting *Doherty*, 502 U.S. at 323, 112 S.Ct. 719). This concern for finality suggests that we should review deferentially the Board's decision not to reopen Sevoian's case.

Sevoian offers a statutory argument suggesting that his motion to reopen should receive heightened review. He points out that the claim for relief underlying his motion to reopen is mandatory, not subject to the Attorney General's discretion to grant. Sevoian's claim arises under the Convention Against Torture, and Congress, in adopting the Convention, stated: "It shall be the policy of the United States not to ... effect the involuntary return of any person to a country in which there are substantial grounds for believing the person would be in danger of ... torture." Foreign Affairs Reform and Restructuring Act of 1998, Pub.L. No. 105–277, § 2242(a). *See also* 8 C.F.R. § 208.16(c)(4) (stating that if the INS reaches the merits of a claim under the Convention and decides the alien meets the requirements of the relevant statutes and regulations, the alien is "entitled" to withholding or deferral of removal). Sevoian argues that this mandatory language implies that the Board has less discretion in adjudicating motions to reopen that assert claims under the Convention than it does in handling mo-

tions to reopen that raise claims for relief that the Attorney General has discretion to grant or deny (such as asylum on the ground that the alien has shown a "well-founded fear of persecution" in his country of origin, 8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1) (2000)).

We are not so persuaded. Motions to reopen implicate important finality concerns even when they seek to raise an underlying claim for relief, such as relief under the Convention Against Torture, that is not committed to the Attorney General's discretion. The Supreme Court held so in *Doherty*, which dealt with denials of reopening on the ground of failure to produce new and material evidence. *See Doherty*, 502 U.S. at 323, 112 S.Ct. 719 ("[T]he abuse-of-discretion standard applies to motions to reopen 'regardless of the underlying basis of the alien's request [for relief].'") (quoting *Abudu*, 485 U.S. at 99 n. 3, 108 S.Ct. 904). As we have said, the Supreme Court likens immigration motions to reopen to petitions for rehearing and motions for a new trial, describing all as proceedings that are "disfavored" for reasons of finality. *See Doherty*, 502 U.S. at 323, 112 S.Ct. 719.

Another issue deserves consideration. In 1996, Congress amended the removal statute, which previously made no provision for reopening, to allow for the filing of one motion to reopen, including a deadline and other provisions that now govern such motions. *See* 8 U.S.C. § 1229a(c)(6) (2000). Several previous courts, including the Supreme Court, have used the absence of any statutory provision for reopening as a premise for arguing that reopening decisions should be reviewed for abuse of discretion. *See Doherty*, 502 U.S. at 322, 112 S.Ct. 719 ("[T]here is no statutory provision for reopening of a deportation proceeding, and the authority for such motions derives solely from regu-

lations promulgated by the Attorney General"); *M.A.*, 899 F.2d at 307; *Achacoso–Sanchez v. INS,* 779 F.2d 1260, 1264 (7th Cir.1985) (using same reasoning). That premise is no longer true. We must consider the effect of this statutory change, which could be viewed as raising an argument against deferential review of Sevoian's motion, although the parties do not discuss the point.

We are not persuaded that this change alters the conclusion that abuse of discretion review is proper. While the revised statute now allows a motion to reopen, it does not change the substantive standards that the INS has promulgated to govern the granting of motions to reopen, and those standards are restrictive. 8 C.F.R. § 3.2(a) provides: "The Board has discretion to deny a motion to reopen even if the party moving has made out a prima facie case for relief." The section describing motions to reopen, 8 C.F.R. § 3.2, is "framed negatively; it directs the Board not to reopen unless certain showings are made." *Abudu,* 485 U.S. at 105, 108 S.Ct. 904 (quoting *INS v. Jong Ha Wang,* 450 U.S. 139, 144 n. 5, 101 S.Ct. 1027, 67 L.Ed.2d 123 (1981) (per curiam)). *See* 8 C.F.R. § 3.2(c). No statute or regulation creates any circumstance in which a motion to reopen must be granted. This implies that motions to reopen remain "discretionary" motions, *INS v. Phinpathya,* 464 U.S. 183, 188 n. 6, 104 S.Ct. 584, 78 L.Ed.2d 401 (1984), which the Board or Immigration Judge has "broad discretion" to grant or deny, *INS v. Rios–Pineda,* 471 U.S. 444, 449, 105 S.Ct. 2098, 85 L.Ed.2d 452 (1985).

As a final consideration, analyzing Sevoian's case in light of background principles of administrative law also suggests that it is appropriate to use the deferential abuse of discretion standard to review the immigration agency's decision whether his motion to reopen raised a prima facie case.

The requirement of a prima facie case for reopening appears in several INS regulations,[5] but the term "prima facie case" does not appear in the immigration statutes. The INS has given meaning to the requirement through decisions of the Board of Immigration Appeals. The Board's decisions reveal that in the immigration context, "prima facie" scrutiny of a motion to reopen means an evaluation of the evidence that accompanies the motion as well as relevant evidence that may exist in the record of the prior hearing, in light of the applicable statutory requirements for relief. The question is whether the "evidence reveals a reasonable likelihood that the statutory requirements [for relief] have been satisfied." *In re S–V–, Int.* Dec. 3430, 2000 WL 562836 (BIA May 9, 2000) (en banc). The Board has stated that "no hard and fast rule can be laid down as to what constitutes a sufficient showing of a prima facie case for reopening. Much depends on the nature of the case and the force of the evidence already appearing in the record sought to be reopened." *Matter of Sipus,* 14 I. & N. Dec. 229, 1972 WL 27443 (BIA Nov. 10, 1972). The decision involves "both a factual and a legal determination." *Matter of Ige,* 20 I. & N. Dec. 880, 885, 1994 WL 520996 (BIA 1994).

**5.** For example, a deportable alien who files prior to June 21, 1999, receives a "free" motion under the Convention Against Torture to reopen past removal proceedings, but the alien must establish a "prima facie case" for withholding or deferral of removal or the motion cannot succeed. 8 C.F.R. § 208.18(b)(2)(ii). Other regulations provide that the Board has authority to deny motions to reopen even if the movant establishes a "prima facie case." 8 C.F.R. § 3.2(a). The Immigration Judge may do the same. *See* 8 C.F.R. § 3.23(b)(3).

Neither party to this case questions the validity of the gloss the Board has given to "prima facie case" in its administrative decisions. Nor do we.

The reopening decision is made, as in this case, without the benefit of an evidentiary hearing on the new issues raised in the motion to reopen. Indeed, the very purpose of a motion to reopen is to win a hearing. The determination to be made is whether the facts articulated are likely to meet the relevant statutory or regulatory standards. There are sound reasons for applying the abuse of discretion level of review to an informal decision in this context. We are poorly positioned to review mixed factual and legal determinations by immigration agencies. Deference is appropriate when reviewing decisions like the one here, which turn on both the totality of the circumstances and the applicable legal standards for relief. *See Najjar,* 257 F.3d at 1278 ("It is axiomatic that immigration courts are better suited than a reviewing court to make factual determinations regarding an alien's status."); *Mitev v. INS,* 67 F.3d 1325, 1331 (7th Cir.1995) (acknowledging the "superior expertise of the agencies that administer our immigration law"). The need for such deference is magnified when, as here, there is not a trial-type evidentiary record on the merits of the underlying claim to guide the court's review of an administrative decision. Therefore, in addition to the concerns about finality discussed above, analogy with practice in other informal administrative contexts likewise suggests that it is appropriate to apply the abuse of discretion level of judicial review to the Board's ultimate decision.

For the foregoing reasons, we hold that when the Board or an Immigration Judge denies reopening on prima facie case grounds, the ultimate decision should be reviewed for an abuse of discretion, while findings of fact should be reviewed for substantial evidence. *Accord Kamalthas,* 251 F.3d at 1281; *see also Najjar,* 257 F.3d at 1304 (applying both substantial evidence and abuse of discretion standards).

We see further support for this bifurcated approach to review of the prima facie case decision on reopening in *Ass'n of Data Processing Serv. Orgs., Inc. v. Bd. of Governors of Fed. Reserve Sys.,* 745 F.2d 677 (D.C.Cir.1984) (Scalia, J.). The court there concluded that when the Administrative Procedure Act (APA)'s "arbitrary, capricious, or an abuse of discretion" standard of judicial review is applied to a factual issue in an informal administrative decision, it is functionally *equivalent* to the substantial evidence standard. The court stated:

> When the arbitrary or capricious standard is performing that function of assuring factual support, there is no *substantive* difference between what it requires and what would be required by the substantial evidence test, since it is impossible to conceive of a "nonarbitrary" factual judgment supported only by evidence that is not substantial in the APA sense.

*Id.* at 683–84.

Having determined our standard of review, we turn to the Board's ruling on Sevoian's motion.

## II.

### A.

Under the abuse of discretion standard, the Board's decision must be reversed if it is "arbitrary, irrational, or contrary to law." *Tipu v. INS,* 20 F.3d 580, 582 (3d Cir.1994) (quotation marks omitted).

■ An applicant for relief on the merits under the Convention Against Torture

bears the burden of establishing "that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2). The United States Senate specified this standard, as well as many of the other standards that govern relief under the Convention, in the several "understandings" that it imposed on the United States' ratification of the Convention Against Torture. *See* 136 Cong. Rec. 36192, 36198 (1990); *In re J–E–*, 23 I. & N. Dec. 291, 296, 2002 WL 481156 (BIA Mar. 22, 2002) (en banc). The standard for relief "has no subjective component, but instead requires the alien to establish, by objective evidence" that he is entitled to relief. *Id.* at 302. Logically, then, the prima facie case standard for a motion to reopen under the Convention requires the applicant to produce objective evidence showing a "reasonable likelihood," *S–V–*, 2000 WL 562836 at *3, that he can establish that he is more likely than not to be tortured. Under that standard, and in light of our deferential scope of review, we do not think the Board acted arbitrarily or contrary to law when it decided that Sevoian had failed to make a prima facie showing of probable torture.

Torture, under the regulations, is defined as acts done "by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity," by means of which "severe pain and suffering, whether physical or mental, is intentionally inflicted" for purposes such as obtaining confessions, punishment, intimidation or coercion. 8 C.F.R. § 208.18(a)(1); *see also* 136 Cong. Rec. at 36198. It is significant that even cruel and inhuman behavior by government officials may not implicate the tor-

ture regulations. "Torture is an extreme form of cruel and inhuman treatment and does not include lesser forms of cruel, inhuman or degrading treatment or punishment that do not amount to torture." 8 C.F.R. § 208.18(a)(2). Decision-makers evaluating claims under the Convention should pay attention to "evidence of past torture inflicted upon the applicant," 8 C.F.R. § 208.16(c)(3)(i), as well as considering all other relevant evidence, 8 C.F.R. § 208.16(c)(3).

■ Sevoian argues that several pieces of evidence establish his prima facie eligibility for relief under the Convention.

First is the State Department Report on human rights conditions in Georgia. It states that prisoners in Georgia are subjected to physical abuse "on a routine basis," but "usually ... to extract confessions." Further, Georgian security forces have in the past tortured defendants in "politically sensitive cases." The Board viewed the record as showing that "for the most part torture is used[in Georgia] to extract confessions from prisoners, which would not be the case" with Sevoian.[6] It concluded that insufficient evidence supported Sevoian's claim that he would face torture in Georgia, and that therefore he had failed to set forth a prima facie case. The Board's reference to "insufficient evidence" indicates that it weighed the evidence and found it lacking, and thus made a factual finding about Sevoian's claim. Applying the substantial evidence test enunciated above to this finding, we cannot conclude that a reasonable factfinder would be compelled to find to the contrary.

In further support of the government's position, we note that the report does not suggest whether much, or any, of the

---

**6.** The Board's reasoning suggests a permissible inference that the authorities would not need a confession from Sevoian because he would be readily convicted for his refusal to serve in the military.

"beat[ing] and abuse" that occurs in Georgian jails rises to the extreme level that violates the Convention Against Torture.

Next, Sevoian offers documents prepared by private human rights groups describing conditions in Georgia. These documents include a number of anecdotes reported by political prisoners, describing inhumane government practices that would, very likely, qualify as torture under the Convention. These anecdotes, however, supply no basis for concluding that Sevoian, simply for avoiding conscription, would be subjected to the sort of political torture employed on enemies of the regime.

Other human-rights group documents presented by Sevoian state that detainees in Georgia, "particularly political opponents," are often "ill-treated or tortured" during interrogation. Again, this evidence suggests that mistreatment is directed foremost at political prisoners. Moreover, to the extent it supports Sevoian's claim, we think that the Board could reasonably give the non-governmental sources of evidence offered by Sevoian less weight than the State Department report—which, as we have said, is consistent with the Board's ultimate decision. *Kazlauskas v. INS*, 46 F.3d 902, 906 (9th Cir.1995) (giving strong evidentiary weight to State Department report, describing it as "the most appropriate and perhaps the best resource" on country conditions). *Cf. Chang v. INS*, 119 F.3d 1055, 1064 (3d Cir.1997) (giving weight to private human rights group's report on country conditions in China where such reports were "consistent with the State Department report," but stating: "We do not suggest that relief to an alien should be granted based solely on such reports[,] particularly where they conflict with findings of the Department of State.").[7]

Sevoian also testified personally about some incidents of harassment and abuse that he experienced or heard of in Georgia. Sevoian testified that in 1994, after participating in a kick boxing tournament, he was attacked by a group of young men, one of whom was armed with a metal rod, and that the men beat him with the rod and bloodied him. However, Sevoian presented no plausible evidence that this attack was "inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity," as required by 8 C.F.R. § 208.18(a)(1). Sevoian's counsel tries to argue that the fact that the police did not question Sevoian or his mother about the assault after they reported it amounts to official "acquiescence" in the beating, but the regulations state clearly that there is no "acquiescence" to torture unless the relevant officials know about the torture *before* it occurs. 8 C.F.R. § 208.18(a)(7).

Sevoian also describes an incident in 1994 in which police detained him for failure to carry identification, then punched him in the face and head. While this reflects state violence against Sevoian, it must be evaluated in light of the standard promulgated by the INS, which defines torture as "an extreme form of cruel and inhuman treatment [that] does not include lesser forms of cruel, inhuman or degrading treatment or punishment that do not amount to torture." 8 C.F.R. § 208.18(a)(2). In view of that standard, the Board could accept this evidence and

---

7. We need not decide whether to adopt the strict view of the en banc Fourth Circuit in *M.A.*, which stated that "[non-governmental] organizations may have their own agendas and concerns, and their condemnations are virtually omnipresent," and concluded that "[a] standard of asylum eligibility based solely on the pronouncements of private organizations ... is problematic almost to the point of being non-justiciable." 899 F.2d at 313.

deny reopening without abuse of discretion.

Finally, Sevoian offers second-hand testimony of official abuse inflicted on a Kurdish friend of his serving in the Georgian military (who, Sevoian testified, was beaten by his fellow soldiers), and on a Kurdish neighbor who was beaten by the police. The first incident is of questionable relevance to Sevoian's torture claim, which asserts that he will face torture in the Georgian criminal justice system. The second incident weakly supports the claim of Sevoian's motion to reopen, but it is not sufficient, in light of the other evidence, to outweigh the deference that we give to the Board's resolution of these matters.

The record contains no other significant evidence that favors reopening Sevoian's Convention Against Torture claim. The Board's conclusion that Sevoian failed to produce sufficient evidence of torture in Georgia was based on substantial evidence. Its resolution of the merits of Sevoian's motion to reopen, in holding that Sevoian failed to raise a prima facie case, was not "arbitrary, irrational or contrary to law," *Tipu*, 20 F.3d at 582, and so was not an abuse of discretion.

### B.

■ In determining whether the Board abused its discretion, we must also ask "whether the [B]oard followed proper procedures and considered and appraised the material evidence before it." *Tipu*, 20 F.3d at 583 (quoting *Sotto v. INS*, 748 F.2d 832, 837 (3d Cir.1984)). Sevoian argues that the Board's decision rejecting his motion to reopen dealt with the record evidence in such a "minimalistic and non-detailed manner," *Mansour v. INS*, 230 F.3d at 908, that it constituted a procedural defect warranting reversal. We reject Sevoian's argument.

In *Mansour*, the Seventh Circuit vacated the Board's prima facie denial of an alien's Convention Against Torture claim and remanded for more careful consideration. The court stated that the Board had improperly "allow[ed] a negative credibility determination" in Mansour's earlier asylum proceeding to "wash over [his] torture claim" instead of giving that claim independent consideration. *Id.* at 907. The court held that the Board is required to "consider the issues raised, and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." *Id.* at 908 (internal quotation marks omitted).

Applying this requirement, the Seventh Circuit held that the Board's treatment of the details of Mansour's torture claim was too "minimalistic and non-detailed" to be sustained. 230 F.3d at 908. It held the Board's opinion deficient in failing even to discuss the U.S. State Department country report on Iraq, Mansour's home country, which detailed practices of abuse against the Assyrian Christian minority there. Secondly, the Board also made a critical error in describing Mansour as a "Syrian Christian," which would have indicated that he was of Arab descent, when his whole torture claim was based on his identity as an *Assyrian*, a member of a non-Arab ethnic group subject to persecution in Iraq. *Id.* at 907–09. These faults convinced the Seventh Circuit that the Board had not "thoroughly explored" the basis of Mansour's torture claim. *Id.* at 909.

Here, the Board's opinion adjudicating Sevoian's motion to reopen is brief, but it is more substantial than the one held inadequate in *Mansour*. The Board analyzed Sevoian's torture claim as follows:

> In [Sevoian's] motion, he simply argues that he will be jailed due to his refusal to serve in the military and that torture

is used against prisoners in Georgian jails. We first note that the mere fact that the respondent may be jailed for disobeying the law of his native country is not a basis for relief under the Convention. 8 C.F.R. § 208.18(a)(3) [ (stating that 'lawful sanctions' do not normally constitute torture) ]. Further, while mistreatment may occur in Georgian prisons, it appears from the record that for the most part torture is used to extract confessions from prisoners (Exh. 11) [ (containing the State Department country report on Georgia) ], which would not be the case in the respondent's situation.... Insufficient evidence supports the respondent's claim that he will face torture in Georgia.

This reasoning avoids the flaws deemed fatal in *Mansour*, as it does not contain any material factual errors concerning the record, and it specifically addresses the State Department report on the petitioner's country.

Sevoian argues, in effect, that the Board was required to address explicitly each type of evidence that he presented in order to justify its prima facie denial of his motion to reopen. While the Board's discussion of the issue could have been more detailed, we hold it was sufficient. The Board's opinion recognized and addressed Sevoian's key contention under the Convention Against Torture—that if removed, Sevoian would end up in the Georgian criminal justice system, and that suspects and criminals in Georgia are tortured. The Board reasonably characterized the State Department report, which states that prisoners in Georgia are often subjected to physical abuse, but that such abuse is "usually to extract confessions," while Georgian security forces sometimes torture defendants in "politically sensitive cases." The Board stated that it surveyed the record. The State Department report apparently provided the chief basis for the Board's conclusions that Georgian police would not need to seek a confession from Sevoian, and thus would not torture him. While there is other evidence in the record that paints a darker picture than the qualified account in the State Department report, we have concluded (in Part II.A., *supra*) that the Board could reasonably credit the State Department instead of the human rights groups or Sevoian. Its citation and discussion show sufficiently that it "comprehended and addressed [Sevoian]'s torture claim." *Mansour*, 230 F.3d at 908. The Board "is not required to write an exegesis on every contention," *id.*, but only to show that it has reviewed the record and grasped the movant's claims. We conclude that requirement was met here.

## III.

For the foregoing reasons, we deny Sevoian's petition for review of the decision of the Board of Immigration Appeals.