

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-14-2003

# Rumicha v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-2525

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Rumicha v. Atty Gen USA" (2003). *2003 Decisions*. Paper 371.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/371

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

————

No. 02-2525

————

DEMISSEW L. RUMICHA,
                                                      Petitioner
v.

JOHN ASHCROFT,
ATTORNEY GENERAL UNITED STATES OF AMERICA,
                                                      Respondent

————

Petition for Review of an Order
of the Board of Immigration Appeals
(A-72-370-698)

————

Submitted Under Third Circuit LAR 34.1(a)
June 26, 2003

Before:  SLOVITER, AMBRO, Circuit Judges, and TUCKER,* District Judge

(Filed: July 14, 2003 )

————

OPINION OF THE COURT

————

* Hon. Petrese B. Tucker, United States District Court for the Eastern District of
Pennsylvania, sitting by designation.

SLOVITER, Circuit Judge.

Demissew Rumicha petitions for review of an order of the Board of Immigration Appeals ("BIA") affirming the Immigration Judge's ("IJ") denial of Rumicha's motion to reopen the record in order to seek relief under the United Nations Convention Against Torture ("CAT"). We will deny the petition for review.

I.

BACKGROUND

Rumicha is a native and citizen of Ethiopia and is of Oromo ethnicity, the largest ethnic group in Ethiopia. He entered the United States in 1989 on a student visa. The Immigration and Naturalization Service ("INS") began deportation proceedings in 1993 because Rumicha did not comply with the conditions of his visa. Rumicha filed applications for asylum and withholding of deportation. In 1995, he withdrew his applications and was granted voluntary departure until July 17, 1996 pursuant to an agreement with the INS. An alternate order of deportation was entered. Rumicha then filed a motion to reopen the proceedings to suspend deportation. The IJ reopened the hearing but denied Rumicha's application to suspend deportation. Rumicha's request to reinstate his voluntary departure until February 25, 1998 was granted.

In October 1997, Rumicha and the INS filed a joint motion to reopen stating that the law had changed with respect to Rumicha's prior application to suspend deportation. The IJ granted the motion and Rumicha filed new applications for asylum, withholding of

2

deportation and suspension of deportation. In April 1998, Rumicha again withdrew his applications in exchange for an extended period of voluntary departure until April 15, 1999 pursuant to an agreement with the INS. Rumicha remained in the United States and on June 18, 1999, he filed a motion to reopen the proceedings to seek relief under the CAT.

In his motion to reopen, Rumicha stated that, while living in Ethiopia, he was a member of the Oromo Liberation Front ("OLF"), a group working to ensure human rights for the Oromo people. Ethiopian authorities arrested and detained Rumicha in September 1987 after he distributed pamphlets about the OLF. While detained, he was beaten and his foot was broken. He did not receive medical treatment. He was released six months later. Rumicha returned to work as a school teacher and had no further contact with the OLF. In June 1989, he arrived in the United States.

The government in Ethiopa was overturned in 1991. A transitional government ultimately led by Meles Zenawi was in place until 1995. The current government, established in 1995, is also headed by Meles Zenawi, now the Prime Minister. While in the United States, Rumicha has protested against the current government and has supported the OLF North American Group. The 1998 Department of State country report reflects that the government has detained OLF members, in particular those accused of participating in armed action against the government. A 1999 Amnesty International Report reflects that the OLF and the government have engaged in war in part of the

3

country. Based on his affiliation with the OLF, Rumicha believes that he will be tortured or killed if he returns to Ethiopia.

In 1991, after the change in government, Rumicha's brother, an OLF member, was killed. A second brother was imprisoned in 1991 and 1992. He escaped and Rumicha does not know if he is alive. A third brother was shot and imprisoned in 1992 and escaped to the Sudan. Rumicha's two other siblings, who were also imprisoned for four months in 1991 for supporting the OLF, and his parents still live in Ethiopia.

In denying Rumicha's motion to reopen, the IJ concluded that he did not establish a prima facie case for relief under the CAT. The IJ explained that there is no evidence that Rumicha's relatives who remained in Ethiopia after 1992 have been tortured or persecuted or that the Ethiopian government has noticed Rumicha's political activities in the United States. In addition, Rumicha does not hold a leadership position in the OLF. The IJ also stated that although there are reports that security officials mistreat detainees and arbitrarily arrest and detain prisoners, Oromos are the largest ethnic group in Ethiopia and the isolated incidents of mistreatment do not establish the probability of torture for Rumicha based upon his ethnicity or his ties with the OLF. Finally, the IJ noted that the basis of Rumicha's application under the CAT is indistinguishable from the asylum applications that he twice withdrew, and that Rumicha did not attempt to explain why he withdrew his prior applications.

The BIA affirmed the decision of the IJ without opinion pursuant to 8 C.F.R. §

4

3.1(a)(7).  This petition for review followed.

## II.

## JURISDICTION AND STANDARD OF REVIEW

The BIA had jurisdiction under 8 C.F.R. § 3.1(b).  We have jurisdiction to review

the BIA's final order pursuant to 8 U.S.C. § 1252(a)(1).  See also Sevoian v. Ashcroft,

290 F.3d 166, 169 (3d Cir. 2002) (reviewing BIA's denial of motion to reopen).  When

the BIA affirms the decision of the IJ without opinion pursuant to 8 C.F.R. § 3.1(a)(7),

the IJ's decision is the final agency determination.  8 C.F.R. § 3.1(a)(7)(iii).  Thus, we

must review the decision of the IJ.

We review for abuse of discretion an IJ's decision denying a motion to reopen for

failure to establish a prima facie case for relief under the CAT and we review findings of

fact for substantial evidence.  Sevoian, 290 F.3d at 174-75.  Under the abuse of discretion

standard, the decision must be reversed if it is arbitrary, irrational or contrary to law.  Id.

## III.

## DISCUSSION

An alien whose deportation order became final before March 22, 1999 may move

to reopen the proceedings to seek protection under the CAT.  8 C.F.R. § 208.18(b)(2).

The  motion to reopen must have been filed by June 21, 1999, and the evidence must

establish a prima facie case that the removal must be withheld or deferred under the CAT.

Id.  At issue is whether Rumicha established a prima facie case for relief under the CAT.

5

An applicant seeking relief on the merits under the CAT must establish "'that it is more likely than not that he or she would be tortured if removed to the proposed country of removal.'" Sevoian, 290 F.3d at 175 (quoting 8 C.F.R. § 208.16(c)(2)). The prima facie case standard for a motion to reopen requires the applicant to produce objective evidence showing a reasonable likelihood that s/he can establish that s/he is more likely than not to be tortured. Sevoian, 290 F.3d at 175.

Torture is defined "as acts done 'by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity' by means of which 'severe pain and suffering, whether physical or mental, is intentionally inflicted' for purposes such as obtaining confessions, punishment, intimidation or coercion." Id. (quoting 8 C.F.R. § 208.18(a)(1)). "'Torture is an extreme form of cruel and inhuman treatment and does not include lesser forms of cruel, inhuman or degrading treatment or punishment that do not amount to torture.'" Id. (quoting 8 C.F.R. § 208.18(a)(2)). All evidence relevant to the possibility of future torture is considered, including evidence of past torture, evidence as to whether the applicant could relocate to another part of the country and evidence of gross, flagrant or mass violations of human rights within the country of removal. 8 C.F.R. § 208.16(c)(3).

Rumicha argues that he established a prima facie case for withholding or deferring his removal under the CAT by providing evidence demonstrating a reasonable likelihood that he will be tortured if he returns to Ethiopia. He points to his affidavit which

6

describes the torture the Ethiopian government inflicted upon him in the past, a letter from his brother describing the harassment that he has endured, a letter from the North American office of the OLF describing Rumicha's role with the OLF, and articles issued by the Department of State, Amnesty International and Human Rights Watch describing the torture of political detainees who are members of the OLF or who oppose the Ethiopian government.

We believe that the evidence that Rumicha produced has not established that the IJ abused his discretion in denying Rumicha's motion to reopen. That evidence does not show a reasonable likelihood that he will be tortured if he returns to Ethiopia. Rumicha's 1987 detention occurred under a different government and it therefore does not support a reasonable likelihood of torture by the current government. His brother's letter is focused on the problems his brother has encountered in Sudan. Rumicha also supports his motion to reopen the record with a letter from the OLF representative in the United States that states that Rumicha took an active and visible role in supporting the OLF, describes the political developments in Ethiopia since the change in government in 1991 and opines that Rumicha may become a target of persecution if he returns to Ethiopia. In addition, the latest Department of State and Amnesty International reports reflect problems in the government's human rights practices, including detention of OLF activists, but the Department of State report states that simple membership in the OLF is not necessarily cause for arrest, and that the Ethiopian government distinguishes between OLF members

7

and leaders.

In his appeal, Rumicha argues that the IJ applied an improper standard in denying his motion to reopen and that the IJ decided the merits of his claim under the CAT rather than deciding whether there was a reasonable likelihood that he would succeed on the merits. The IJ, however, stated in his decision that Rumicha did not establish a prima facie case for withholding under the CAT and that he "failed to meet his burden of demonstrating a reasonable likelihood that relief under [the CAT] might be forthcoming." App. at 61. The IJ did not err in applying the standard he did. Rumicha further argues that the BIA abused its discretion because it failed to exercise its plenary power to reverse the IJ's decision for application of an improper standard. However, because the IJ applied the proper standard, this argument lacks merit.

Finally, Rumicha argues that the IJ erroneously required him to explain why he withdrew his applications for asylum. Although the IJ noted that Rumicha did not provide an explanation for the withdrawals, he also thoroughly reviewed the evidence submitted in support of the motion to reopen and denied the motion based upon the evidence. The IJ noted, inter alia, that after Rumicha was released from detention, he returned to work as a teacher for the Ministry of Education and continued to work there for 15 months without incident, he was issued a passport and visa, and he was able to leave Ethiopia. His brother and sister are employed as teachers in Ethiopia, his parents are presently living there, and there is no evidence that any members of his family

8

remaining in Ethiopia after 1992 were tortured or persecuted.

IV.

CONCLUSION

For the reasons set forth above, we will deny the petition for review.

_____

TO THE CLERK:

Please file the foregoing opinion


/s/Dolores K. Sloviter
Circuit Judge