

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-24-2009

# Tania Padgett-Zelaya v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-2780

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Tania Padgett-Zelaya v. Atty Gen USA" (2009). *2009 Decisions*. Paper 1143.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1143

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-2780
_____

TANIA PADGETT-ZELAYA,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES

_____

On Petition for Review of an Order
of the Board of Immigration Appeals
Agency No. A087 021 274
Immigration Judge: Walter A. Durling

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 24, 2009
Before: SLOVITER, STAPLETON and COWEN, Circuit Judges

(Opinion filed: June 24, 2009)
_____

OPINION
_____

PER CURIAM

 Tania Supaya Padgett-Zelaya petitions for review of an order of the Board of

Immigration Appeals ("BIA" or "Board"). For the reasons that follow, we will deny the

petition.

I.

Padgett is a native and citizen of Honduras. She entered the United States without permission in September 2002. Her U.S.-citizen stepfather filed a visa petition on her behalf. In removal proceedings, an Immigration Judge ("IJ") found her removable as charged, but granted her adjustment of status under INA § 245(i) [8 U.S.C. § 1255(i)], despite evidence that Honduras had issued a warrant for her arrest for murder.[1] Based on testimony and statements in the State Department's Country Report for Honduras, the IJ determined that the arrest warrant was "issued under dubious circumstances by a foreign government which corrupts its judiciary and has little regard for the due process of its citizens under arrest." The IJ determined that the existence of the warrant did not compel him to deny the adjustment application as a matter of discretion. The IJ also noted as potential negative factors that Padgett had an unlawful entry and had used a fake social security number for employment, but determined that those factors were present in "a substantial majority of adjustment cases," and therefore did not accord those factors great weight.

The Government appealed. In a decision dated June 3, 2008, the Board sustained the appeal, finding that adverse factors outweighed the equities. The BIA noted positive equities, such as established family ties in the United States, residence for over five years,

---

[1] In December 2000, Congress passed the Legal Immigration Family Equity or "LIFE" Act, which altered the provisions of INA § 245(i), 8 U.S.C. § 1255(i), to enable certain aliens to remain in the United States while seeking to adjust their status.

and a U.S. citizen fiancé. However, the BIA found those factors outweighed because of the warrant for her arrest for murder, the fact that she had been in the U.S. illegally for more than 5 years, and the fact that she had knowingly obtained employment via a false social security number. The BIA reversed the IJ's grant of adjustment of status and ordered Padgett removed to Honduras.

About a month before the BIA's order, Padgett, through counsel, had filed a "Motion to Consider New Evidence or in the Alternative to Remand to the Immigration Judge" ("Remand Motion"). A.R. 57. The motion included three attached documents; one from Padgett's attorney in Honduras, one from the Honduran Prosecutor, and one from the Honduran judge who had previously issued the warrant for murder. The documents from the prosecutor and the judge stated that the warrant for murder was issued in mistake, and instead, the warrant should have been for the crime of "concealment of murder." The letter from the attorney stated that the Honduran government had not provided him with any evidence that would show his client was involved in "concealment of murder."

After the BIA issued its decision, Padgett filed a motion to reopen or reconsider, A.R. 27; noting that the BIA had failed to mention the Remand Motion and failed to consider its impact. The Government filed a response in opposition to the motion. A.R. 48. On July 10, 2008, the BIA denied the motion, acknowledging its "apparent factual error in failing to recognize the respondent's 'new' evidence that was submitted prior to

3

the issuance of our June 3, 2008 decision," but finding that Padgett had failed to show any legal error in the Board's previous decision. The Board also stated that evidence that Padgett was only wanted for concealment of murder was "not responsive to the full breadth of the reasoning cited in our previous detailed decision." The BIA noted that the previous decision was based not only on the warrant, but also on the fact that Padgett had been in the country illegally for 5 years and that she had used a false social security number. The BIA determined that the new information was not "sufficiently material to her claim to warrant a remand." A.R. 2.

Padgett filed a timely, counseled petition for review of the June 3, 2008 decision. She did not file a petition for review of the July 10, 2008 decision. The Government filed a motion to dismiss and a renewed motion to dismiss, both of which Padgett opposed. A motions panel referred those motions to the merits panel, and also granted Padgett's motion for a stay of removal.

II.

Because Padgett did not file a petition for review of the July 10, 2008 decision, we may only review the Board's June 3, 2008 decision. See Nocon v. I.N.S., 789 F.2d 1028, 1032-33 (3d Cir. 1986) (final deportation orders and orders denying motions to reconsider are independently reviewable; a timely petition for review must be filed with respect to the specific order sought to be reviewed).

The Government argues that pursuant to 8 U.S.C. § 1252(a)(2)(B) we lack

4

jurisdiction to review the June 3, 2008 decision, because the BIA denied Padgett adjustment of status as a matter of discretion. Under § 1252(a)(2)(B)(i), courts are stripped of jurisdiction to review "any judgment regarding the granting of relief under section . . . 1255 . . . of this title." However, under the REAL ID Act of 2005, our jurisdiction has been expanded to include "constitutional claims or questions of law raised upon a petition for review" notwithstanding the jurisdictional limitations of § 1252(a)(2)(B). 8 U.S.C. § 1252(a)(2)(D); Papageorgiou v. Gonzales, 413 F.3d 356, 357-58 (3d Cir. 2005).

We discern two issues raised by Padgett that we have jurisdiction to review: (1) the BIA violated its regulations by not granting her unopposed Remand Motion; and (2) the BIA considered improper factors in denying her motion for adjustment of status.[2] We will consider the arguments in turn.

### III.

Padgett argues that because the Government did not timely respond to her Remand Motion, it should have been deemed unopposed pursuant to 8 C.F.R. § 1003.2(g). We

___

[2] A third issue is raised in Padgett's responses to the Government's motions to dismiss: that her due process rights were violated by the BIA's failure to consider her motion to remand before rendering its June 3, 2008 decision. Padgett does not raise this issue in her appellate brief, and it is therefore waived. Chen v. Ashcroft, 381 F.3d 221, 235 (3d Cir. 2004). In any event, the BIA had the opportunity to consider her motion to remand in conjunction with her motion for reconsideration. As noted above, Padgett has not properly challenged the BIA's decision denying the motion for reconsideration as she failed to file a petition for review of that decision.

5

agree. However, she then goes on to conclude that because the motion was unopposed, it should have been granted. We cannot agree with her conclusion. In Sevoian v. Ashcroft, 290 F.3d 166, 173 (3d Cir. 2002), we stated that "[n]o statute or regulation creates any circumstance in which a motion to reopen must be granted," and that the Board thus retains discretion to grant or deny such motions. The same is true for motions to remand. Padgett points to no statute or regulation that requires that an unopposed motion be granted. Her argument is without merit.

Padgett also argues that in denying her adjustment of status, the Board inappropriately considered her unlawful entry and unauthorized employment, as those are factors that are specified by statute as irrelevant to consideration of adjustment of status under INA § 245(i). As Padgett notes, § 245(i) specifically states that an alien who otherwise qualifies may apply for adjustment of status under this provision "[n]otwithstanding the provisions of subsections (a) [the requirement of lawful admission or parole] and (c) of this section [disqualification for those who engaged in unauthorized employment]." But Padgett does not cite any portion of the statute, nor any case law, supporting her argument that unlawful entry and unauthorized employment are factors that "cannot be considered as negative factors in the exercise of discretion." Pet. Br. at 12. In fact, an examination of the statute reveals that the once an alien applies for adjustment of status pursuant to § 245(i), "the Attorney General may adjust the status of the alien to that of an alien lawfully admitted for permanent residence . . . ." INA § 245(i)(2) (emphasis

6

added). The statute does not require the Attorney General to grant adjustment of status to an alien who is qualified, nor does the statute indicate that the Attorney General is forbidden to consider factors such as unlawful entry and unauthorized employment in deciding to deny adjustment of status as a matter of discretion. We therefore find no merit in her argument that the Board considered invalid discretionary factors in her case.

For the foregoing reasons, we will deny the petition for review.[3]

---

[3] The Government's Motion to Dismiss for Lack of Jurisdiction and Renewed Motion to Dismiss for Lack of Jurisdiction are granted in part and denied in part, as explained in subsection II, supra.