**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-3477
_____

EDDIE YENNER MURPHY KARPOLEH,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A088-934-419)
Immigration Judge: Honorable Andrew R. Arthur
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
on June 25, 2015

Before: CHAGARES, KRAUSE, and BARRY, <u>Circuit Judges</u>.

(Filed: July 13, 2015)
_____

OPINION*
_____

CHAGARES, <u>Circuit Judge</u>.

     Petitioner Eddie Karpoleh seeks review of a Board of Immigration Appeals

("BIA") order affirming the Immigration Judge's ("IJ's") denial of his request for asylum

_____

\* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

pursuant to 8 U.S.C. § 1158, withholding of removal pursuant to 8 U.S.C. § 1231(b)(3), and the Convention Against Torture ("CAT"). For the following reasons, we will deny the petition for review.

I.

We write solely for the parties and therefore recite only the facts necessary to our disposition. Karpoleh gave the following account before the IJ: he claimed he was a police officer in Liberia during the administration of President Charles Taylor. Appendix ("App.") 1406-07. He earned the enmity of Taylor loyalists by reporting a stockpile of illegal weapons to General Opande of the United Nations ("UN") peacekeeping force in August 2003. App. 422. During the post-Taylor interim government, Liberians United for Reconciliation and Democracy ("LURD") rebels detained and beat Karpoleh overnight before UN peacekeeping forces secured his release. App. 426, 1407.[1] After his release, the interim government arrested him on charges of attempting to overthrow the government. App. 532. General Opande helped get him out of prison and advised him to flee the country. App. 535, 1409. While living in the Netherlands, he received an invitation from defense counsel for Chuckie Taylor, Charles Taylor's son, to fly to Florida and testify on Chuckie Taylor's behalf. App. 992, 1411. Taylor loyalists made threatening calls to him and his fiancée, now wife, to encourage his testimony. App. 868, 1412. When Karpoleh arrived in Florida and explained that he had little knowledge of the events at issue in the trial, Chuckie Taylor's friends and lawyers pressured him to

---

[1] A physician submitted a declaration on Karpoleh's behalf attesting that the many scars on Karpoleh's body were consistent with the beatings he described suffering at LURD's hands. App. 825-29.

give false testimony. App. 992, 1412-13. He refused, fled from Miami, and eventually sought asylum in the United States. App. 1413-14.

The IJ found Karpoleh was not credible based on a large number of inconsistencies in his story. First, Karpoleh said he reported the illegal weapons stockpile to General Opande of the UN peacekeeping forces in August 2003, but Opande did not enter the country until October 2003. App. 437. Second, Karpoleh claimed he was detained by LURD for one day, but a letter from Opande asserts it was several days. App. 450. Third, Opande's letter does not even reference Karpoleh's subsequent detention by the interim government or the role Karpoleh says he played in securing his release. App. 560-61. Fourth, Karpoleh claimed he was never in the army and never carried a gun, but his wife testified otherwise, App. 672, a news article Karpoleh submitted appears to refer to him as "General Eddie Murphy," see App. 378,[2] and a letter from journalist C.Y. Kwanue — also submitted by Karpoleh — describes Karpoleh as a "former fighter[s]" App. 993. Fifth, the IJ found it implausible that Chuckie Taylor would go to such lengths to secure Karpoleh's testimony if, as Karpoleh testified, Taylor and his allies already distrusted him and had many other witnesses capable of testifying. App. 196-97.

Because Karpoleh's testimony was not credible, the IJ found he could not credit his proof of past persecution or fear of future persecution. App. 201-02. The IJ therefore rejected Karpoleh's petition. The IJ further noted that even if Karpoleh's testimony had

---

[2] Karpoleh claimed in his asylum application that the author was using his middle name, "Murphy." App. 1408.

3

been credible, there was sufficient proof of changed conditions in Liberia to discount his fear of future persecution and reject his petition on that ground as well. App. 204-05.

On appeal, the BIA found no clear error in the IJ's adverse credibility finding and his finding of changed country conditions. App. 7 n.3, 8. Karpoleh timely filed the present petition for review.

II.[3]

We will uphold a BIA decision if it is supported by substantial evidence. Dia v. Ashcroft, 353 F.3d 228, 248 (3d Cir. 2003) (en banc). We review an agency's adverse credibility determinations under the substantial evidence standard as well. Xie v. Ashcroft, 359 F.3d 239, 243 (3d Cir. 2004). "[A]dverse credibility determinations based on speculation or conjecture, rather than on evidence in the record, are reversible." Dia, 353 F.3d at 249 (quotation marks and citation omitted).

III.

To obtain asylum, an applicant must show that he is "unwilling or unable to return to his home country because of '[past] persecution or [a] well-founded fear of [future] persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.'" Chavarria v. Gonzalez, 446 F.3d 508, 515-16 (3d Cir. 2006) (quoting 8 U.S.C. § 1101(a)(42)(A)). A showing of past persecution gives rise to a rebuttable presumption of a well-founded fear of future persecution. 8 C.F.R. § 1208.13(b)(1). The Government may rebut this presumption if a preponderance of the

_____

[3] The BIA had jurisdiction pursuant to 8 C.F.R. § 1003.1(b)(3). This Court has jurisdiction pursuant to 8 U.S.C. § 1252(a).

4

evidence shows that there "has been a fundamental change in circumstances such that the applicant no longer has a well-founded fear of persecution . . . ." 8 C.F.R. § 1208.13(b)(1)(i)(A).

To obtain withholding of removal, an applicant must demonstrate a clear probability that she would face persecution on removal to a particular country. INS v. Stevic, 467 U.S. 407, 429-30 (1984). "The 'clear probability' standard is a more rigorous standard than the 'well-founded fear' standard for asylum." Zubeda v. Ashcroft, 333 F.3d 463, 469 (3d Cir. 2003) (citing Janusiak v. INS, 947 F.2d 46, 47 (3d Cir. 1991)). "Thus, if an alien fails to establish the well-founded fear of persecution required for a grant of asylum, he or she will, by definition, have failed to establish the clear probability of persecution required for withholding of deportation." Id. at 469-70.

Because Karpoleh filed his asylum application after May 11, 2005, the provisions of the REAL ID Act governing credibility determinations apply. See Chukwu v. Att'y Gen., 484 F.3d 185, 189 (3d Cir. 2007). Under the REAL ID Act, credibility determinations may be based on, among other things, "the demeanor, candor, or responsiveness of the applicant or witness, the inherent plausibility of the applicant's or witness's account . . . the internal consistency of each such statement, the consistency of [written and oral] statements with other evidence of record . . . , and any inaccuracies or falsehoods in such statements." 8 U.S.C. § 1158(b)(1)(B)(iii).

The BIA found Karpoleh was unable to establish past persecution or a well-founded fear of future persecution because his testimony was not credible. Karpoleh argues on appeal that the BIA failed to consider the totality of the circumstances or

properly weigh his explanations for the apparent inconsistencies in the record. In

particular, Karpoleh explained to the IJ and the BIA that near misses with respect to the

dates he met General Opande (August as opposed to October) and was held by LURD

(one day as opposed to several) were understandable given the events happened ten years

before he submitted his asylum application, and the detention was naturally disorienting.

He also argued that General Opande's silence about helping obtain his release from

prison should not be held against him when he could not control what Opande chose to

remember of their history, which may have been less remarkable for the general than the

prisoner. Finally, he asserted that his wife's testimony regarding his military service

should count for relatively little when she was not in Liberia and did not know him

during the relevant time period, and he had submitted substantial evidence that he was

never in the army.

Each of these explanations may be plausible, and yet they do not compel us to

conclude that the BIA's analysis was in error. The mere existence of alternate

explanations for inconsistencies in the record does not preclude an adverse credibility

finding based on those inconsistencies. Nor does the existence of some corroborating

evidence. Far from salvaging Karpoleh's credibility, the totality of the circumstances

shows that, whatever explanations there may be for individual inconsistencies, the record

is replete with contradictions significant enough to support an adverse credibility

determination. In conclusion, we find the BIA's decision to deny Karpoleh's application

for asylum and withholding of removal is supported by substantial evidence.

IV.

An applicant for relief under the CAT bears the burden of establishing "that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2).[4] The standard for relief "has no subjective component, but instead requires the alien to establish, by objective evidence that he is entitled to relief." Sevoian v. Ashcroft, 290 F.3d 166, 175 (3d Cir. 2002) (quotation marks omitted). A claim for relief under the CAT is analytically separate from claims for asylum and withholding of removal, and "a decision-maker must review claims for relief under the [CAT] and consider relevant country conditions even where adverse credibility determinations have precluded relief under the [Immigration and Nationality Act]." Tarrawally v. Ashcroft, 338 F.3d 180, 188 (3d Cir. 2003).

Here, both the IJ and the BIA considered Karpoleh's CAT claim apart from his INA applications. They found that Karpoleh lacked credible testimony that he faced torture if removed either to the Netherlands or Liberia. They also found that conditions in Liberia had so changed that Karpoleh's evidence of past persecution, if credible, would not establish a threat of torture at the instigation or acquiescence of the Liberian government today. Given that other defense witnesses in the Chuckie Taylor trial have returned to Liberia without incident, Liberia's security has improved since Karpoleh left, and there are no reports of individuals being tortured based on their previous affiliations,

---

[4] "For an act to constitute torture under the [CAT] and the implementing regulations, it must be: (1) an act causing severe physical or mental pain or suffering; (2) intentionally inflicted; (3) for an illicit or proscribed purpose; (4) by or at the instigation of or with the consent or acquiescence of a public official who has custody or physical control of the victim; and (5) not arising from lawful sanctions." Auguste v. Ridge, 395 F.3d 123, 151 (3d Cir. 2005).

neither the IJ nor the BIA erred in finding changed country conditions. The BIA's denial of relief under the CAT is supported by substantial evidence.

V.

For the foregoing reasons, we will deny Karpoleh's petition for review.

8