

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-8-2004

# Vertus v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-2671

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Vertus v. Atty Gen USA" (2004). *2004 Decisions.* Paper 850.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/850

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Case No:  03-2671

RENALD VERTUS;
WADNER VERTUS,

Petitioners

v.

JOHN ASHCROFT, ATTORNEY GENERAL
OF THE UNITED STATES OF AMERICA;
TOM RIDGE, SECRETARY OF DEPARTMENT
OF HOMELAND SECURITY;
WILLIAM RILEY, ACTING DISTRICT
DIRECTOR, BUREAU OF IMMIGRATION &
CUSTOMS ENFORCEMENT,

Respondents

On petition for review of a final order
of the Board of Immigration Appeals
File Nos: A79-128-441
A79-128-442

_____

Submitted pursuant to Third Circuit LAR 34.1(a)
on March 26, 2004

Before: FUENTES, SMITH, and
GIBSON, *Circuit Judges*,[*]

(Filed:  April 8, 2004)

_____

[*] The Honorable John R. Gibson, Senior Circuit Judge for the United States Court of
Appeals for the Eighth Circuit, sitting by designation.

_____

OPINION OF THE COURT
_____

SMITH, *Circuit Judge.*

The petitioners, Renald and Wadner Vertus, are half-brothers seeking asylum, withholding of removal under the Immigration and Nationality Act ("INA"), and withholding of removal under the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("Torture Convention"). For the reasons set out below, we affirm the decision of the Board of Immigration Appeals ("BIA").

I.

Wadner Vertus, age 14, and his half-brother Renald Vertus, age 17, entered the United States on January 25, 2002 with fraudulent passports. The brothers were referred to asylum-only proceedings on January 26, 2002. Their claims were consolidated before the IJ and the BIA, and are virtually identical. The IJ heard testimony on December 23, 2002.

Wadner Vertus lived with his uncle, Cala Vertus, in Saint Marc, Haiti. In November 2001, Wadner was at home alone watching television. A group of people came to his house, began shouting, and shooting guns in the air, and threw rocks onto the metal roof, some of which actually pierced the roof. He explained that the crowd was noisy, and although he could not understand what they were saying he believed them to be, unlike his uncle, Aristide supporters. Wadner ran the short distance to the home

2

where his half-brother Renald lived with his mother and step-father.  When Wadner first related what took place at his home, Renald's mother did not believe him.

Within a short time of Wadner's arrival, however, a group of people gathered around the home.[1]  The group fired shots into the air and threw rocks at Renald's home.  The group then broke down the door, and demanded that the occupants of the house either produce Renald's step-father, Tifre Laguerve, or be killed.  Wadner was the first to exit the home by the back door.  He went to the home of a friend and hid for approximately an hour.  Renald carried another younger brother out of the house, returning to retrieve his younger sister.  As he exited the house a second time with his younger sister, Renald was struck with a rock just below his eye.   His mother also was struck by a rock as she fled from the house, which incapacitated her for several minutes.  Renald was subsequently taken to a local hospital where his injury was bandaged.  Renald and Wadner testified that, prior to the attacks on their homes, they were unaware of any political activity of Cala Vertus and Tifre Laguerve whom the mobs apparently sought.

After the above events, Renald and Wadner were sent by their families to Port-au-Prince.  They remained there until they flew with a family friend, Merlene Norde, to New York.  They planned to stay over one night in New York and then to continue on to Paris, where their father resides.  Their journey ended in New York, however, when they were stopped by the INS for attempting to use false passports.  Renald testified that his

---

[1] Wadner was unsure whether the group was the same group of people which had attacked his home. J.A. 195.

mother and step-father remain in hiding to this day. In fact, his mother urged him not to return home. She has informed Renald that the pro-governmental individuals who had targeted their home in November continue to search for him.[2]

The IJ denied Renald and Wadner's applications for asylum, concluding that they had not demonstrated persecution "on account of" political opinion. The BIA found the boys credible, but agreed that they failed to demonstrate that the events took place because of their political opinion.

## II.

Asylum is proper where an alien demonstrates that he qualifies as a refugee who is unable or unwilling to return to his home country because of "persecut[ion] or who has a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). Where a petitioner fails to establish that he is entitled to asylum, we presume he cannot meet the higher standard for withholding of removal under the INA and the Torture Convention. *Abdille v. Ashcroft*, 242 F.3d 477 (3d Cir. 2001); *Janusiak v. INS*, 947 F.2d 46, 47 (3d Cir. 1991).[3]

---

[2] The parties provided supplemental briefing on the current political upheaval in Haiti. The parties agree that our review is limited to the record which was before the BIA, and should not include any shift in political conditions in Haiti. *See Fatin v. INS*, 12 F.3d 1233, 1241 (3d. Cir. 1993).

[3] Withholding of removal is appropriate where "the Attorney General determines that such alien's life or freedom would be threatened in such country on account of race, religion, nationality, membership in a particular social group, or political opinion." 8

We must affirm the BIA's findings unless the evidence compels a contrary determination. *Awolesi v. Ashcroft*, 341 F.3d 227, 228 (3d Cir. 2003). Here, the BIA determined that, although Wadner and Renald were credible, they had not "established a nexus between what happened to [them] . . . and any of the grounds delineated in the [INA]."

A careful review of the record reveals only that Renald's mother has instructed him not to return to the country because pro-governmental forces believe that he knows where to find his step-father. She does not, however, indicate that the mobs that attacked the homes of Renald and Wadner did so because the boys knew where their step-father and uncle could be found. Nor did either boy testify that they were targeted because of their relationship with those who opposed the Haitian government. The record reveals nothing more than the plight of two boys who were in the wrong houses at the wrong time. Nothing in the record reflects that they would have been treated differently by the mobs, had the boys been neighbors, friends, or even intruders in the home. Similarly, nothing in the record indicates that Renald and Wadner would be in any danger if they relocated to the homes of other relatives, or that any relatives not living with Cala and Tifre are in danger. We, therefore, conclude that there is insufficient evidence to compel a reasonable fact finder to arrive at a conclusion contrary to that of the BIA—that the

---

U.S.C. § 1253(h)(1). An applicant for withholding of removal under the Torture Convention bears the burden of establishing "that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." *Sevoian v. Ashcroft*, 290 F.3d 166, 174-75 (3d Cir. 2002) (quoting 8 C.F.R. § 208.16(c)(2)).

boys did not prove that their treatment was because of political opinion. We will affirm the judgment of the BIA.