

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-29-2004

# Armanyous v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-2011

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Armanyous v. Atty Gen USA" (2004). *2004 Decisions.* Paper 321.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/321

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 03-2011 and 03-2817
_____

AIAD SOLIMAN ARMANYOUS;
JOANNA L. RUTKOWSKA;
ROBERT A. ARMANYOUS;
MARIETTA A. ARMANYOUS,

Petitioners

v.

JOHN ASHCROFT, Attorney General of the
United States
_____

On Petition for review of an Order of the Board of Immigration Appeals
INS Nos. A73-629-558, A73-629-559, A73-663-656, A73-663-657

Submitted Under Third Circuit LAR 34.1(a) September 21, 2004

Before:   McKEE,, ROSENN and WEIS Circuit Judges

(Filed:  September 29, 2004)
_____

OPINION OF THE COURT
_____

ROSENN, Circuit Judge.

    Petitioners appeal from a final order by the Board of Immigration Appeals (BIA)

denying a motion to re-open their deportation proceedings.  The BIA denied the

Petitioners motion to re-open its decision, and dismissed their appeal from an immigration

court's Order of Deportation and from withholding of removal. The Immigration Judge (IJ) had granted them voluntary departure. We affirm.

I.

Aiad Soliman Armanyous (Armanyous), the lead Petitioner, filed an application for political asylum on his own behalf and on behalf of his wife and their two children. He sought relief from removal and petitioned for political asylum and voluntary departure, and on behalf of the lead appellant only, the withholding of removal. After a hearing on the petition, the IJ designated Egypt as the country of removal for the lead Petitioner and his two children, and Poland as the country of removal for the wife.

The lead Petitioner is a male citizen of Egypt, and was thirty-five years of age at the time of the hearing. His wife is a native and citizen of Poland. Together, they have children, both born in Greece, citizens of Egypt, though potentially citizens of Poland as well, according to their mother's testimony in court. They entered the United States in 1996 on tourist visas that expired and they overstayed. They were all placed in removal proceedings as a result of an application for asylum. During the hearing before the IJ, each Petitioner, through counsel, admitted the truth of the factual allegations contained in the Notice to Appear and conceded deportability as charged.

At the hearing, the Petitioners sought asylum and relief from deportation based on a claim of having been persecuted, and having a fear of persecution in Egypt on account of the lead petitioner's membership in the Coptic Christian church. After a lengthy

2

hearing, submission of evidence by the Petitioner, and delivery of an oral opinion, the IJ denied their application for asylum in all of its aspects. The IJ, however, entered their applications for voluntary departure and ordered them to depart the United States on or before September 1, 2000, or any date beyond that date as might be granted by any reviewing board of court or by the district director's direction. The Petitioners timely appealed to the BIA. It affirmed summarily the decision of the IJ. The Petitioners timely appealed to this court.

## II.

On appeal to this court, Petitioners contend that the IJ relied on her mere personal opinions, speculation, and irrelevant matters in denying their asylum application. They argue that her decision therefore should be reversed and the case remanded. They contend that the documentary corroboration of the Petitioners is not required for overall credible and consistent testimony to meet the burden of proof on eligibility for asylum. Petitioners also contested the denial of a motion to re-open, contending that the grant of their timely filed motion for stay of deportation obviated the requirement to comply with voluntary departure until this court made its decision on the petition for review. They assert that they are prima facie eligible to adjust their status in the United States pursuant to § 245(i) because the lead appellant's petition was approved prior to the BIA's denial of appeal. This court has appellate jurisdiction to review the BIA's denial of a motion to re-open. Sevoian v. Ashcroft, 290 F.3d 166, 169 (3d Cir. 2002). This court reviews the

3

BIA's denial of the motion to re-open on grounds of failure to make out a prima facie case and the BIA's findings of fact for substantial evidence and abuse of discretion. Id. at 173.

In this case, the BIA did not file an opinion except for a order dismissing the appeal. We therefore review the findings of fact of the IJ. The testimony before the IJ was voluminous, consisting primarily of the testimony of the male petitioner and the IJ reviewed the record carefully.

III.

The lead petitioner testified that the Egyptian police were out to get him because he was Christian, but there was no evidence, police records or otherwise, that the police were unwilling to assist any Christian or try to protect them. The IJ found no general evidence at all contained in Egypt's information that would corroborate Armanyous's claim that the police were cooperating with the Gamaat Islamiya to harm Coptic Christians. The IJ found no proof that any of the general evidence presented by Armanyous revealed that the police turned away Christians, telling them that they were not entitled to protection. The report of our own State Department shows that the government of Egypt has taken a harsh attitude against Gamaat Islamiya. The IJ found that the information of the State Department is simply not consistent with Armanyous's unsupported claim that the police pushed him out of their office, unwilling to assist him even when Armanyous could identify his assailant. The IJ refused to accept Armanyous's

4

testimony about what he might have told the military about his problems.

The IJ also considered that although Armanyous left Egypt in 1988 and remained out of the country until 1996, there was absolutely no evidence from anyone, not a sibling, not the Petitioner, not his parents, that anyone from the Gamaat Islamiya or Hashim came around looking for Armanyous during any of those years that he was gone. Furthermore, Armanyous is now married to a woman from Poland, who could easily sponsor him for residence in Poland. Finally, the IJ concluded that even though Armanyous may have been attacked in the past by Moustafa Hashim, and potentially persecuted in the past by Hashim, "that there have been a number of changes of circumstances that convinced the court that the asylum claim cannot be granted automatically based on a past persecution analysis. Furthermore, there was a period of time that Armanyous lived with his parents in another part of Egypt and he was not subject to any a attack by Hashim or anyone else.

The IJ was not convinced of the reasonableness or wellfoundedness of Armanyous's fear based on a one-time event in Egypt in 1996 when he returned there with his wife that he would be persecuted if he returned again to Egypt.

Armanyous claimed that when he returned to Egypt in 1996, he was walking at night on the street and suddenly was accosted by Hashim again, although they had not seen each other for about six years. Hashim sarcastically welcomed him to Egypt and again threatened the lives of his family. The IJ found this coincidence amazing and was

5

impressed by the failure of Armanyous and his wife to turn to the police and file any kind of a report. Armanyous and his wife simply returned to their new condominium in a place called Miami, Egypt, packed up their things, and immediately went to Cairo. There was no evidence that the IJ could find that Armanyous, his wife, and children were ever in harm at their new home in Miami, Egypt. The IJ found that there was absolutely no evidence at all that Petitioners were ever given any kind of trouble or that anyone ever knew that they were living in Miami. Despite that situation, they went to Cairo, where they remained for a few days before coming to the United States. There is no evidence of any kind of threats of harm to them or of any trouble while they were in Cairo.

Thus, the IJ was not convinced that the police would be unwilling to help Armanyous and his wife if they had a problem. The court found as a matter of law that the application for asylum could not be granted.

As to the application for withholding of removal, the court asserted that it required even more convincing proof. Petitioners failed to establish a clear likelihood of persecution should they return to Egypt. Given the evidence of persons in Armanyous's family who lived in Egypt without trouble, the court was unable to find that there existed a clear likelihood that Armanyous and his family would be subjected to persecution upon their return to Egypt. The court therefore also denied the application for withholding. The IJ found that the voluntary departure is the only application that the court could still determine in the case. It therefore granted voluntary departure.

6

Accordingly, the petition for review of the BIA decision denying the appeal of the IJ's denial of asylum and denying appellant's motion to re-open or reconsider are denied.

Costs taxed to Petitioners.