

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-12-2005

# Orozco Gomez v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-2181

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Orozco Gomez v. Atty Gen USA" (2005). *2005 Decisions*. Paper 870.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/870

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

———

No. 04-2181

———

LUZ ANGELA OROZCO GOMEZ;
JAIME ROGER PINZON,
Petitioners

v.

ATTORNEY GENERAL OF THE UNITED STATES,*
BOARD OF IMMIGRATION APPEALS of the Executive
Office for Immigration Review of the U.S. Department of Justice,
Respondents

*(Caption amended pursuant to Rule 43(c), Fed. R. App. Pro.)

———

Petition for Review of the Orders
of the Board of Immigration Appeals
(A78 228 315 and A78 228 316)

———

Submitted Under Third Circuit LAR 34.1(a)
July 11, 2005

Before: SLOVITER, McKEE, Circuit Judges, and FULLAM, District Judge*

(Filed July 12, 2005)

———

OPINION

———

* Hon. John P. Fullam, Senior Judge, United States District Court for the Eastern
District of Pennsylvania, sitting by designation.

SLOVITER, <u>Circuit Judge</u>.

Luz Angela Orozco Gomez ("Orozco") and her husband Jaime Roger Pinzon ("Pinzon"), both citizens of Colombia, petition for review of a decision of the Board of Immigration Appeals ("BIA") affirming the decision of the Immigration Judge ("IJ"). The IJ denied petitioners' application for asylum and withholding of removal under the Immigration and Nationality Act ("INA"), and Article 3 of the United Nations Convention Against Torture ("CAT"), finding that Orozco failed to meet the statutory prerequisites, lacked credibility and could avoid future persecution by relocation within Colombia. The IJ similarly denied Pinzon's application since it was entirely dependant on Orozco's claims. For the reasons set forth below, we will affirm the IJ's decision.

Since we write solely for the parties, we need only restate the relevant facts. Petitioners are native citizens of Colombia. According to Orozco's testimony, Orozco comes from a politically active family in Colombia that has repeatedly had problems with FARC, the Revolutionary Armed Forces of Colombia. FARC is not a governmental entity, but it is an organization that the Colombian government is unable to control. In October 1998, Orozco's uncle was kidnapped by FARC and held captive for seven months. A cousin was also kidnapped by FARC, first in 1998 and then again in 1999. Orozco testified that in July 2000, another uncle was murdered by FARC in a kidnapping attempt, but the government notes that Orozco presented no evidence to support her belief that FARC was responsible.

Before coming to the United States, Orozco worked on the congressional campaign of Liberal Party candidate Raphael Amador who was successful. She helped organize the meetings and pass out literature. According to Orozco, it was well known that she was working on Amador's campaign. She testified that on July 20, 1999, she received an anonymous call from a member of FARC demanding that she meet them at a cafeteria in Bogata. Orozco did not attend the meeting and ten days later she received a second call. She testified that the caller demanded to know why she did not show up for the meeting and warned her that she should remember her uncle. On August 9, 1999, Orozco's mother received a call offering condolences for her daughter's death. This call was then followed with the delivery of a "sufragio," a gift that is typically provided to people who are mourning the death of a relative.

The petitioners were married on August 7, 1999. However, Orozco did not move in with her husband after her marriage or after receiving these threats. Instead, in August 1999, she fled to the United States. Her husband joined her here in October 1999. On August 22, 2000, Orozco submitted her application for asylum. On August 26, 2000, Pinzon submitted his claim for political asylum.

Regarding petitioners' application for asylum, the IJ held that the petitioners had not demonstrated that the persecution that allegedly happened in the past or the persecution they fear will happen in the future is on account of a protected ground. The IJ also found that the petitioners had not demonstrated that the feared persecution exists

3

throughout the country and that they could not relocate to other areas of Colombia. Lastly, the IJ found that portions of Orozco's testimony lacked credibility. Specifically, the IJ found that Orozco's testimony that the FARC caller warned her to remember her uncle was not credible and found that her reasons for not moving in with Pinzon after receiving the threats from FARC were extremely unbelievable. Based on these reasons the IJ also denied petitioners' applications for withholding of removal. The IJ denied their applications for relief under the CAT based on the fact that the feared persecutor was a not governmental entity. The BIA affirmed the IJ's decision without opinion.

The BIA took appellate jurisdiction over the decision of the IJ pursuant to 8 C.F.R. §§ 1003.1(b)(3), (9). This court has jurisdiction over the petition for review pursuant to 8 U.S.C. § 1252(a)(1). This court's jurisdiction over final orders of removal requires that we review the decision of the BIA, but if the BIA merely adopted the IJ's opinion, as here, we review the IJ's decision. Gao v. Ashcroft, 299 F.3d 266, 271 (3d Cir. 2002).

The scope of our review is narrow. We review findings of fact for substantial evidence. Abdille v. Ashcroft, 242 F.3d 477, 483 (3d Cir. 2001). Under this standard, we are bound by the administrative findings of fact unless those findings would compel a reasonable adjudicator to arrive at a contrary conclusion. 8 U.S.C. § 1252(b)(4)(B); see also Abdille, 242 F.3d at 483-84.

On appeal, petitioners claim that the IJ erred in determining that parts of Orozco's testimony were not credible, in holding that the petitioners could relocate within

4

Colombia and in finding that they did not qualify for asylum, withholding of removal or protection under the CAT. They also argue that their due process rights were violated because they allege that the IJ was biased against them.

We subject the IJ's adverse credibility finding to substantial evidence review which requires us to "uphold the credibility determination of the BIA or IJ unless 'any reasonable adjudicator would be compelled to conclude to the contrary.'" Chen v. Ashcroft, 376 F.3d 215, 222 (3d Cir. 2004) (quoting 8 U.S.C. § 1252(b)(4)(B)).

The IJ based her adverse credibility findings on discrepancies between Orozco's oral testimony and documentary evidence and on her disbelief of portions of Orozco's testimony. The IJ was particularly concerned with the fact that although Orozco would have been safer living with Pinzon, which Pinzon himself conceded, Orozco testified that she did not move in with him after the threats because they were not yet married. However, as the IJ noted, they were in fact married by the time Orozco received the August 9th call. Orozco also testified that the reason she did not move in with Pinzon was because it would be too cumbersome, but the IJ found this explanation even more "ridiculous" considering that a few weeks later Orozco packed up and moved all the way to the United States. App at 14.

The IJ's concern about these discrepancies was justifiable and would provide substantial evidence to support an adverse credibility finding. However, the IJ's decision was not based on a finding of adverse credibility but on the IJ's determination that

5

petitioners have not demonstrated past persecution or a reasonable fear of future persecution based on one of the enumerated grounds.

To be eligible for asylum, petitioners have the burden of establishing that they meet the statutory requirements for refugee status. Abdille, 242 F.3d at 482. A refugee is defined as one who cannot or will not return to his or her country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). Petitioners' claims are based on both political affiliation and membership in a particular social group (the Orozco family); however, nothing in the evidence presented demonstrates that the threats against Orozco were made because of either of these affiliations.

Orozco was unable to say what the meeting with FARC was supposed to involve. She speculated that the meeting may have been intended to convince her to help FARC with its campaign or to penalize her somehow for working for the Amador campaign. The IJ noted that it is unlikely that FARC would focus its efforts on Orozco, who had a fairly low level position in the campaign rather than on more prominent or influential members of the campaign. Accordingly, Orozco has failed to demonstrate eligibility for asylum based on her political affiliation.

In addition, the IJ correctly noted that there is also little evidence to support a conclusion that the phone calls were related to Orozco's family membership. The only

6

reference to her family was made in the one call which admonished Orozco to remember her uncle. Even if this reference were viewed as a threat, there is no evidence that the threat was directed at Orozco because of her family membership or because she was related to her uncle. She was the only person in her immediate family who received such threats. Accordingly, there is no support for her suggestion that she was being persecuted as a result of her family membership.

Because we conclude that petitioners have not demonstrated any past persecution or a well-founded fear of future persecution, we need not consider the IJ's holding that petitioners could avoid future persecution by relocating within Colombia. Furthermore, we will uphold the IJ's denial of petitioners' application for withholding of removal because an applicant whose asylum application is denied also fails to meet the standards for withholding of removal. Lukwago v. Ashcroft, 329 F.3d 157, 182 (3d Cir. 2003).

Turning to petitioners' request for relief under the CAT, they have failed to establish "'that it is more likely than not that . . . she would be tortured if removed to the proposed country of removal.'" Sevoian v. Ashcroft, 290 F.3d 166, 175 (3d Cir. 2002) (quoting 8 C.F.R. § 208.16(c)(2)). Torture is defined as "pain or suffering [that] is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 208.18(a)(1). There is substantial evidence to support the IJ's determination that Orozco did not qualify for relief under the CAT because "the feared persecutor is not the government or any public

7

official or anyone working with the acquiescence of a public official." App at 21.

Lastly, we find no merit to petitioners' claim that the IJ's conduct constituted a due process violation and demonstrated bias. According to petitioners, the IJ demonstrated "flagrant hostility," a "lack of objectivity" and an insufficient basis for her conclusions. Petitioners' Br. at 24. "[I]t is well established that 'due process demands impartiality on the part of those who function in judicial or quasi-judicial capacities.'" Abdulrahman v. Ashcroft, 330 F.3d 587 (3d Cir. 2003) (quoting Schweiker v. McClure, 456 U.S. 188, 195 (1982)). However, in this case it is clear that the IJ's conclusions were based on reasonable interpretations of the evidence. Further, although the IJ could have phrased her conclusions more delicately in some instances, the IJ's concern and sympathy for the petitioners' plight is obvious throughout her opinion. She repeatedly makes sympathetic statements, noting that "it is extremely troubling . . . that the respondent feels terror at this moment," App. at 16, and adding that, "[i]n no way does the Court mean to trivialize this case." App. at 18. Accordingly, petitioners' argument that the IJ was biased against them is not supported by the record.

For the reasons set forth, we will deny the petition for review.