

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-7-2006

# Gao v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-2481

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Gao v. Atty Gen USA" (2006). *2006 Decisions.* Paper 608.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/608

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 05-2481

———

XIU RONG GAO,
                              Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                              Respondent

———

PETITION FOR REVIEW OF A DECISION OF
THE BOARD OF IMMIGRATION APPEALS
Agency No. A78-226-487

———

Submitted Under Third Circuit LAR 34.1(a)
June 27, 2006

———

Before: BARRY, VAN ANTWERPEN and SILER,* Circuit Judges

———

(Opinion Filed: August 7, 2006)

———

OPINION

———

_____

* The Honorable Eugene E. Siler, Senior Circuit Judge, United States Court of Appeals
for the Sixth Circuit, sitting by designation.

BARRY, Circuit Judge

Petitioner Xiu Rong Gao, a native of Changle City in the Fujian province of China, asks this Court to grant her petition for review of an order of the Board of Immigration Appeals ("BIA") affirming an Immigration Judge's ("IJ") denial of her applications for asylum and withholding of removal. For the following reasons, we will deny the petition.

**I.**

Gao entered the United States in February 2000 and subsequently filed an application for asylum and withholding of removal with the former Immigration and Naturalization Service ("INS"). Because she entered without being admitted or paroled, Gao was charged with inadmissibility under section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"). *See* 8 U.S.C. § 1182(a)(6)(A)(i). Gao conceded the charge, but reasserted her applications for asylum and withholding of removal.

At her January 19, 2001 hearing, Gao testified that she and her husband, Shea Sheng Gao, were married in 1989, and had their first child, a son, on January 1, 1990. In April 1990, Chinese family planning officials, enforcing China's one-child policy, forced Gao to have an intra-uterine device ("IUD") implanted to prevent additional pregnancies. Gao later went to a private doctor to remove the IUD, and she became pregnant again in August 1991. Fearful that local authorities would discover her pregnancy and force her to have an abortion, Gao claims that she hid in her aunt's home for approximately nine months. Gao returned home in May 1992 to prepare to deliver her baby. Three days later, family planning officials arrived at her home and demanded that Gao have an

abortion. The officials relented, however, after Gao's father-in-law paid them a bribe.

Gao gave birth to her second child, a daughter, on June 13, 1992. Three days later, Gao testified, family planning officials again came to her home, and this time brought her to a medical facility where she was sterilized against her will. Gao's husband confronted the officials, according to her asylum application, and afterwards, "[i]n fear of being detained and tortured, he fled home immediately." (A.R. 699.) The husband went to live in the province of Hubei for three years, and then left China for the United States where he applied for asylum in 1995. His application was denied, and he was ordered deported to China. The BIA affirmed. In 2000, Gao followed her husband to the United States.

In addition to her testimony, Gao submitted a number of documents. Among them was a certificate from the "LongMen Village Committee" of "ChangLe City" purporting to certify that Gao "had female sterilization in June 1992 and [that she and her husband had] paid [a] fine." (A.R. 382.) Additionally, she submitted reports from two American doctors who, after examining her, believed that she had been sterilized, and submitted excerpts from the record of her husband's removal proceeding.

On March 28, 2001, the IJ rejected Gao's asylum and withholding of removal claims. The IJ found that "although it is clear that Respondent has been sterilized, the court is without reliable and credible evidence from Respondent concerning when sterilization took place and whether sterilization was involuntary." (A.R. 121.) The IJ pointed out a number of discrepancies and implausibilities in Gao's testimony and evidence. For instance, there were differences between Gao's sterilization certificate and

3

a certificate Gao's husband submitted during his removal proceedings purporting to evidence his wife's sterilization. Additionally, Gao submitted a document stating that she and her husband registered their marriage with the government on March 10, 1992, which is during the period of time Gao testified that she was in hiding from government officials.

On appeal, the BIA remanded the case for reconsideration of the adverse credibility determination. In its June 13, 2003 opinion, it explained that "[w]hile we do not entirely disagree with some of the concerns outlined by the [IJ] regarding the plausibility of the applicant's claim, we do note that the [IJ] erred when she found that respondent came out of hiding to register her marriage in 1992." (A.R. 76.) The BIA pointed out that Gao testified that her husband's friend helped them to register the marriage so that she did not have to come out of hiding. The BIA directed that the parties should be permitted to provide further evidence.

The IJ held a hearing on September 2, 2003 at which Gao declined to add to her evidence. On October 14, 2003, in a new opinion fully incorporating her prior March 28, 2001 opinion, the IJ again found Gao incredible and ordered her removed to China. The IJ noted that Gao's "written submission claimed that she and her husband registered their marriage in China yet she suddenly in testimony claimed that a friend arranged the certificate's issuance." (A.R. 34.) In addition, the IJ observed that Gao's application "seems to be a patching-up job" of problems in her husband's failed asylum application, including the fact that Gao's "sterilization certificate was redone." (A.R. 34.) The IJ

4

found it telling that, despite his availability, Gao refused to call her husband as a witness to clear up discrepancies between their stories.

Gao again appealed to the BIA, which affirmed the IJ's decision "finding the respondent incredible and denying her requests for relief." (A.R. 2.) Gao now petitions for review of that decision.[1]

## II.

Under § 208(a) of the INA, 8 U.S.C. § 1158(b), the Attorney General has the discretion to grant asylum to a "refugee," that is, an alien "who is unable or unwilling to return to, . . . [his or her] country [of nationality] because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *See* 8 U.S.C. § 1101(a)(42)(A); *Zubeda v. Ashcroft*, 333 F.3d 463, 469 (3d Cir. 2003). An asylum applicant bears the burden of establishing that he or she is a "refugee." 8 C.F.R. § 1208.13(a).

While the decision to grant asylum is discretionary, "the Attorney General must grant withholding of removal if the alien demonstrates a 'clear probability' that, upon return to his or her home country, his or her 'life or freedom would be threatened' on account of race, religion, nationality, membership in a particular social group, or political opinion." *Chen v. Ashcroft*, 376 F.3d 215, 223 (3d Cir. 2004). "An alien who fails to establish that he or she has a well-founded fear of persecution, so as to be eligible for a

---

[1] The BIA had jurisdiction pursuant to 8 C.F.R. § 1003.1(b)(3). We have jurisdiction under 8 U.S.C. § 1252(a)(1). *Sevoian v. Ashcroft*, 290 F.3d 166, 171 (3d Cir. 2002).

grant of asylum, necessarily will fail to establish the right to withholding of removal." *Id.* Congress has specified that "a person who has been forced . . . to undergo involuntary sterilization, . . . shall be deemed to have been persecuted on account of political opinion." 8 U.S.C. § 1101(a)(42)(B).

Where, as here, the BIA summarily affirms a decision by the IJ, we review the IJ's decision. *Abdulai v. Ashcroft*, 239 F.3d 542, 549 n.2 (3d Cir. 2001). The IJ's findings of fact, including an adverse credibility determination, will be upheld only if they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *INS v. Elias-Zacarias*, 502 U.S. 478, 480 (1992). "To reverse the BIA finding we must find that the evidence not only *supports* that conclusion, but *compels* it." *Id.* at 481 n.1.

"[A]n alien's credibility, by itself, may satisfy his burden, or doom his claim." *Dia v. Ashcroft*, 353 F.3d 228, 247 (3d Cir. 2003). For an adverse credibility determination to be supported by "substantial evidence," the IJ or BIA must provide "specific, cogent reasons" for finding the alien's testimony incredible. *Id.* at 249 (quoting *Gao v. Ashcroft*, 299 F.3d 266, 276 (3d Cir. 2002)). "Those reasons must bear a legitimate nexus to the finding, and must be 'valid grounds' for disregarding an applicant's testimony." *Secaida-Rosales v. INS*, 331 F.3d 297, 307 (3d Cir. 2003) (internal citations omitted). Valid grounds include "inconsistent statements, contradictory evidences, and inherently improbable testimony in view of the background evidence on country conditions," but may not include mere "speculation or conjecture." *Dia*, 353 F.3d at 249.

**III.**

Gao argues that it was inconsistent for the IJ to conclude that she was sterilized, yet also find the rest of her testimonial and documentary evidence incredible. We disagree. In order to establish persecution, it was Gao's burden not only to demonstrate that she was sterilized, but that the sterilization was involuntary. *See* 8 U.S.C. § 1101(a)(42)(B). While the doctors' reports support the IJ's conclusion that Gao was sterilized, they say nothing about whether or not it was voluntary. Gao's only evidence that her sterilization was involuntary is her testimony to that effect. Testimony alone can, of course, be sufficient, but only if that testimony is credible. *See Dia*, 353 F.3d at 257.

The IJ's finding that Gao's testimony was not credible is supported by substantial evidence. First, her testimony as to the sterilization certificate casts serious doubt on her claims. At her husband's asylum hearing, he testified much the same as Gao did at her hearing, namely that she gave birth to their second child on June 13, 1992, and that a few days later, authorities took her away for sterilization. As corroboration, her husband submitted a document stating that Gao "is sterilized in my village and also pays $20,000 for . . . over birth according to the 'birth control' policy." (A.R. 301.) This document bore the stamp of the "Long Meng Village Committee, Heng Cheng Town, Changle City," and is dated April 6, 1996. *Id.* Despite the existence of this sterilization certificate, Gao submitted a second sterilization certificate, dated May 19, 2000 and bearing a similar seal, to the IJ. Gao's certificate is more specific than the one her husband submitted in that it says her "female sterilization" was "in June 1992," and less

7

specific in that it simply notes that she "paid fine." (A.R. 382.) Gao claims that her certificate—which is dated after her arrival in the U.S.—was obtained for her by her aunt in China. When questioned why she felt the need to obtain a new certificate, Gao stated that her husband's certificate incorrectly indicated she was sterilized in "September." (A.R. 209.)

Gao's explanation for the existence of two sterilization certificates is without merit. First, no "September" date appears in the English translation of the document submitted by her husband. Even if it did, however, such an important error in the first certificate justified the IJ's skepticism about the accuracy of the second. Moreover, Gao failed to coherently explain what the "LongMen Village Committee" is, or by what authority it can certify the occurrence of an event such as a sterilization; indeed, she indicated in her testimony that this committee does not verify the truthfulness of the information it certifies.[2] These discrepancies call into question the credibility of Gao's testimony surrounding the sterilization and the sterilization certificate she submitted.

Inconsistencies in Gao's testimony regarding the registration of her marriage also support the IJ's adverse credibility determination. Gao testified that during her second pregnancy, from August 1991 until May 1992, she hid from "local authorities" at her aunt's home to avoid being forced to have an abortion. (A.R. 169-70.) Nevertheless, she submitted a "notarial certificate" certifying that she and her husband "were married at the

---

[2] The IJ asked Gao, "So then officials [from the committee] sign anything, even if it's wrong. Correct? Am I right?" Gao replied, "Yeah, right." (A.R. 212.)

registry office on March 10, 1992 . . . [in] Changle County, Fujian Province."[3] (A.R. 333.) On cross examination, Gao attempted to explain that she and her husband did not go themselves to register their marriage, but instead her husband "had a friend who worked at the marriage license office, and . . . the friend help us." (A.R. 180.) She could not recall the name of this "friend." (A.R. 182.) She further testified that they waited until this date to register their marriage because in 1989 they were not yet of legal age to be married in China. She claimed that registering her marriage while in hiding did not put her pregnancy in danger of being discovered because the "marriage license office has nothing to do with the family planning." (A.R. 182.)

The IJ was correct to find it implausible that someone who would flee her home for nine months to avoid government detection in order to prevent an abortion would risk making *any* contact with the government during that same period. Even assuming that Gao and her husband did not register their marriage in 1989 because they were not yet of age to do so, Gao offered no explanation for why the couple could not simply wait until after the birth of their second child to register, having already waited so long to do so. Additionally, Gao did not know the name of the friend who supposedly performed this important favor. Her husband knew, but failed to testify even after Gao was given a second opportunity to produce evidence at the September 2, 2003 remand hearing.

We find that the adverse credibility determination is supported by substantial

---

[3] Additionally, Gao's marriage certificate, dated March 10, 1992, appears in the record.

evidence in the record.[4]  The inconsistencies detailed above "go to the heart of [Gao's]

claim," *see Xie v. Ashcroft*, 359 F.3d 239, 246 (3d Cir. 2004), *i.e.*, that Chinese family

planning officials forced her to be sterilized in June of 1992.  Because Gao failed to

demonstrate eligibility for asylum, the IJ also correctly denied her claim for withholding

of removal.

## III.

In light of the foregoing, the petition for review will be denied.

---

[4] We do note, however, that the IJ made other factual findings that were not supported by substantial evidence and, thus, do not support the adverse credibility determination.  One is the IJ's finding that Gao "admits that the date of sterilization was provided by relatives, not established by the committee that issued the certificate stating the supposed date." (A.R. 34-35.)  Gao did not admit this.  She testified, "[n]o, we, we just do not give [the committee] the date.  We just go in there asking for the record, and they just look it up, the record." (A.R. 211.)  Additionally, the IJ found that Gao's asylum application incorrectly said her husband "fled China to avoid arrest." (A.R. 119.)  These words do not appear in Gao's application.  Gao only stated that "he fled home immediately." (A.R. 699.)  While these errors by the IJ give us pause, they ultimately do not affect our conclusion that the IJ's decision is supported by substantial evidence.