NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 21-1981

_____

JGQ,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA

_____

On Petition for Review of a Final Order of the
Board of Immigration Appeals
(Agency Case A000-00-001)

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on September 26, 2023.

Before: KRAUSE, ROTH, and AMBRO, *Circuit Judges*

(Filed: February 1, 2024)

_____

**OPINION**[*]

_____

KRAUSE, *Circuit Judge*.

Petitioner JGQ, a Mexican citizen, seeks review of the Board of Immigration

Appeals' final order upholding the Immigration Judge's denial of his applications for

withholding of removal under the Immigration and Nationality Act (INA), 8 U.S.C. §

_____

[*] This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not
binding precedent.

1231(b)(3)(A), and for protection under the Convention Against Torture ("CAT"),

*adopted* Dec. 10, 1984, S. Treaty Doc. No. 100-20, 1465 U.N.T.S. 86 (entered into force

in United States Nov. 20, 1994). Because the BIA and IJ applied the correct legal

standards and their decisions are supported by substantial evidence, we will deny the

petition for review.

## I.    DISCUSSION[1]

On appeal, JGQ claims he is entitled to relief because his membership in the

particular social group ("PSG") gay men who are HIV-positive would subject him to

persecution and torture if removed to Mexico.[2] Because JGQ did not offer evidence of

past persecution, he had the burden to show a "clear probability" of future persecution on

account of his PSG, *Garcia v. Att'y Gen.*, 665 F.3d 496, 505 (3d Cir. 2011), and that the

persecution would be committed through the government's "act or omission," *Galeas*

*Figueroa v. Att'y Gen.*, 998 F.3d 77, 86 (3d Cir. 2021), or "by forces the government is

unable or unwilling to control," *Valdiviezo-Galdamez v. Att'y Gen.*, 663 F.3d 582, 591 (3d

---

[1] This Court has jurisdiction to review a final order of removal under 8 U.S.C. § 1252(a)(1). We review legal determinations *de novo* and will uphold factual findings supported by "substantial evidence." *Valdiviezo-Galdamez v. Att'y Gen.*, 663 F.3d 582, 590 (3d Cir. 2011). Where, as here, "'the BIA's opinion directly states that the BIA is deferring to the IJ, or invokes specific aspects of the IJ's analysis and factfinding in support of the BIA's conclusions,'" we review both the IJ's and BIA's decisions. *Thalayan v. Att'y Gen.*, 997 F.3d 132, 137 (3d Cir. 2021) (quoting *Udin v. Att'y Gen.*, 870 F.3d 282, 289 (3d Cir. 2017)).

[2] The IJ also rejected JGQ's asylum claim because he failed to file a timely application. *See* 8 U.S.C. § 1158(a)(2)(B), (D). JGQ did not challenge that determination before the BIA, nor does he do so here, so that issue is forfeited. *See United States v. DeMichael*, 461 F.3d 414, 417 (3d Cir. 2006).

Cir. 2011). Likewise, to establish eligibility for CAT protection, he had to show a likelihood that he would be tortured upon removal by the government or with its acquiescence. *Abdulrahman v. Ashcroft*, 330 F.3d 587, 591 n.2 (3d Cir. 2003); 8 C.F.R. §§ 208.16(c)(2), 208.18(a)(1).

As the deficits in JGQ's claim for withholding of removal apply to his CAT claim as well, we will focus on his arguments in the former context before addressing them briefly in the latter.

## A.  Withholding of Removal

JGQ raises three arguments concerning the denial of his application for withholding of removal. None is persuasive.

First, he contends that the IJ and BIA failed to evaluate the likelihood that he will be persecuted directly by the Mexican government, but the record proves otherwise. In considering whether JGQ faced a clear probability of direct government persecution, the IJ specifically examined whether "the government is actively discriminating on people due to their sexual orientation," A.R. 66, and whether "the harm is coming directly from the government," A.R. 64. She also acknowledged reports of "involvement by police, military and other government officials" in "violence targeting . . . lesbian, gay, bisexual, transgender, and intersex persons." A.R. 64 (citing A.R.238, U.S. Dep't of State, *Human Rights Report for Mexico 2019* (2020) ("DOS Report"), 74).

At the same time, however, she considered the significant evidence in the record of state protections for sexual minorities, including anti-discrimination laws, marriage equality guarantees in Mexico City and ten states, and provisions forbidding sexual

3

orientation discrimination in the constitutions of twenty of the nation's thirty-one states. And based on that evidence, the IJ found that the government itself was not "discriminating on people due to their sexual orientation; rather, it appears to be taking steps to combat these issues." A.R. 66. Given the substantial evidence on which that finding rested, the BIA concluded "there [wa]s no legal or clear factual error in this determination," A.R. 3, and we cannot say on this record that "'any reasonable adjudicator would be compelled to conclude to the contrary,'" *Valdiviezo-Galdamez*, 663 F.3d at 590 (quoting 8 U.S.C. § 1252(b)(4)(B)).

Second, JGQ claims that the IJ's analysis of the government's willingness or ability to control private actors was faulty because it did not account for police complicity. Yet the IJ expressly acknowledged that "there is mistreatment and discrimination against individuals due to their sexual orientation … in Mexico" by private groups and, in some instances, by police officers. A.R. 64 (citing A.R. 238, DOS Report at 74). It simply found, in view of the government's significant "steps to combat some of the issues that individual may face due to their sexual orientation," A.R. 65, that the record as a whole did not establish a likelihood that JGQ would be subject to persecution by forces the government was unwilling or unable to control.

While JGQ urges a contrary conclusion based on *Doe v. Attorney General*, 956 F.3d 135 (3d Cir. 2020), we agree with the BIA that this case is distinguishable. A.R. 2. In *Doe*, we determined that the Ghanian government was unwilling or unable to protect LGBT people, in part because of the police's record of harassing or intimidating them, *id.* at 146–48, but the record in that case was "replete with evidence that Ghanian law

4

deprives gay men … of any meaningful recourse to government protection," *id.* at 147.

Here, in contrast, the record is replete with the evidence catalogued by the IJ that the

Mexican government is working to combat anti-LGBT discrimination. Because "a

reasonable factfinder could agree with [that] determination," the IJ's determination was

supported by substantial evidence, and the BIA did not err in upholding it. *Thalayan v.

Att'y Gen.*, 997 F.3d 132, 143 (3d Cir. 2021).

Third, JGQ maintains that the IJ overlooked relevant evidence of the government's

inability or unwillingness to prevent violence against LGBT people. Petitioner's Br. 21–

22, 33. But the IJ and BIA are "not required to write an exegesis on every contention, but

only to show that [they have] reviewed the record and grasped the movant's claims."

*Sevoian v. Ashcroft*, 290 F.3d 166, 178 (3d Cir. 2002). And here, the IJ's careful

discussion of many of the sources submitted by JGQ, coupled with her recognition that

JGQ had submitted "other articles" describing discrimination against LGBT people in

Mexico, satisfies us that she fulfilled this obligation. A.R. 86. At bottom, JGQ's

argument appears to be that the IJ gave insufficient weight to certain parts of the record,

but "[t]he substantial-evidence standard does not permit this Court to re-weigh evidence,"

*Thalayan*, 997 F.3d at 143, and that standard is met here.

## B.   Protection Under CAT

JGQ makes similar arguments as to why the IJ and BIA erred in rejecting his CAT

claim, but they also lack support in the record. JGQ offered no evidence that he had

endured past torture or attempted to relocate to a safer location within Mexico, *see* 8

C.F.R. § 208.16(c)(3), and, after weighing the record in its entirety, the IJ reasonably

5

determined that he was not likely to be tortured by or with the consent or acquiescence of the government. Given the government's efforts to combat anti-LGBT discrimination, which the IJ recounted at length, the BIA did not err in concluding that determination was legally sound and was supported by substantial evidence, A.R. 9.

I.     **CONCLUSION**

For the foregoing reasons, we will deny JGQ's petition for review.