OPINION OF THE COURT
PER CURIAM.
Daniel Alberto Sanez (“Sanez”) has filed a petition for review of a final order of removal entered by the Board of Immigration Appeals (“BIA”). For the reasons that follow, we will deny the petition.
I.
Sanez, currently age thirty-seven, is a native and citizen of Peru who entered the United States in 2001 on a non-immigrant visa and overstayed. In proceedings before the Immigration Judge (“IJ”), Sanez conceded his removability due to the overstay, and he applied for asylum, withholding of removal, relief under the Convention Against Torture (“CAT”), and, alternatively, voluntary departure. Sanez purportedly fears a return to Peru because of his political ties and past activities as a television news producer and reporter.
Beginning in 1996, Sanez was employed as an executive producer at Frecuencia Latina, a Peruvian television station that aired news programming. At the time, the station was aligned with the then-President of Peru, Alberto Fujimori.[1] However, in 1997, the station planned to air a story critical of the Fujimori administration, ultimately leading to the station’s chairman, Bai’uch Ivcher, being forced to leave Peru and stripped of his citizenship so that he could no longer own the station. Ivcher was replaced as chairman by Mendel Winter', a Fujimori supporter whose wife, Maria Tex’esa Braschi, was a reporter and program host at Frecuencia Latina.
With the station back in the Fujimori fold, Sanez and Braschi developed a stoxy prior to the 2000 presidential election that *256 was critical of candidate Alejandro Toledo based on an allegation that Toledo had fathered an illegitimate child. Sanez thereafter received threatening phone calls at his office and death threats on his personal cell phone, presumably from Toledo supporters. Sanez also worked as a reporter covering the Toledo campaign. On one occasion, a crowd of Toledo supporters physically assaulted Sanez and other members of a Frecuencia Latina crew covering a Toledo rally. Sanez suffered no injury from the assault.
After Fujimori’s contested election victory in 2000, Toledo and his supporters allegedly launched a campaign of retaliation against employees of Frecuencia Latina. Moreover, Toledo supporters released a video showing a Fujimori government official accepting bribes. In the wake of the scandal that followed, Fujimori resigned and left Peru, and Toledo eventually was elected President.
In December 2000, Ivcher (the former chairman of Frecuencia Latina) returned to Peru with the support of Toledo and regained control of the station. Ivcher fired Sanez, Winter, and Braschi. Sanez allegedly was blacklisted as a “traitor” and unable to find employment in the television news business. Winter was tried and convicted in Peru on charges of taking bribes from Fujimori officials. Braschi moved to Ecuador but returned briefly to Peru in 2001 to support her husband’s trial defense, and also returned in 2005 to file for separation from her husband. Peruvian authorities never arrested or detained Braschi on her visits.
Sanez left Peru for the United States in March 2001, fearing that he would be detained and interrogated in Peru due to his role with Frecuencia Latina and his support for Fujimori. Sanez believes that the Peruvian government remains interested in indicting Braschi and therefore would be interested in interrogating Sanez to obtain information against Braschi, and that the current government, under President Alan Garcia, would persecute Sanez due to his past support for Fujimori.
Sanez filed his application for asylum in 2004, in support of which he submitted, inter alia, affidavits from Braschi and other former colleagues, and various reports attesting to the harassment of journalists in Peru. The IJ rejected the asylum application on the ground that it was untimely filed after the expiration of the one-year period in which to file. The IJ also held that Sanez failed to meet his burden of proof for withholding of removal or protection under the CAT. The IJ granted Sa-nez’s alternative request for voluntary departure.
The BIA dismissed Sanez’s appeal. It held that Sanez failed to prove past persecution because his claims of harassment, threats, and a single attack by supporters of Toledo do not rise to the level of harm necessary to constitute persecution. In addition, the firing of Sanez from his job by the new, pro-Toledo station owner did not amount to persecution, particularly in light of Sanez’s testimony that he could have found other work if he had stayed in Peru.
The BIA also found no clear probability of future persecution. It observed that Sanez is not similarly situated to other Peruvian journalists who have suffered harassment and intimidation. Sanez has never been arrested or interrogated, and the record does not reveal any ongoing threat to Fujimori supporters. The BIA noted that Winter was convicted of public corruption because he accepted money from the Fujimori government to air pro-Fujimori programs, and that Braschi, a known journalist and Fujimori supporter, visited Peru after Winter’s arrest and was not arrested. Thus, despite Sanez’s per *257 sonal knowledge of his station’s involvement in public corruption, and his alleged knowledge regarding various politicians’ participation in that corruption, the BIA observed that no one from the Peruvian government, either under Toledo or currently under Garcia, has ever contacted Sanez. The BIA concluded that Sanez’s fear that he will be harmed upon return to Peru is ' “not supported by the record.” Appendix at 3. Finally, the BIA denied CAT relief, concluding that Sanez failed to show that it is more likely than not that he will be tortured in Peru. Like the IJ, the BIA entered a voluntary departure order. Sanez timely filed a petition for review in this Court.
II.
We have jurisdiction under 8 U.S.C. § 1252(a)(1). Where, as here, the BIA issued its own decision, we review that decision, and not the decision of the IJ. Wong v. Att’y Gen., 539 F.3d 225, 230 (3d Cir.2008). The BIA’s conclusions regarding past persecution and the fear of future persecution are findings of fact, reviewed solely for “substantial evidence.” Chavarria v. Gonzalez, 446 F.3d 508, 515 (3d Cir.2006). We also review the denial of CAT relief for substantial evidence. Zubeda v. Ashcroft, 333 F.3d 463, 471 (3d Cir.2003). Under the deferential substantial evidence standard, agency findings “must be upheld unless the evidence not only supports a contrary conclusion, but compels it.” Abdille v. Ashcroft, 242 F.3d 477, 484 (3d Cir.2001).
Sanez first contends that he was denied due process because the BIA allegedly failed to make an “individualized determination” of the record evidence supporting his claim for withholding of removal. Essentially, Sanez argues that the BIA failed to consider or rule upon each alleged instance of his past persecution, and failed to consider the evidence of past persecution as a whole and in connection with objective evidence of the persecution of journalists generally in Peru. As a result, Sanez contends, the BIA erred in concluding that he failed to prove eligibility for withholding of removal.
This Court has held that, for due process to be satisfied, an alien must receive, inter alia, an “individualized determination” of his interests. Abdulai v. Ashcroft, 239 F.3d 542, 550 (3d Cir.2001).[2] Due process has been satisfied where there is “sufficient indicia” that the agency gave “particularized consideration” to the evidence of record. Id. We find no indication here of a due process violation. The BIA clearly considered the record evidence supporting the claim of past persecution, and it addressed Sanez’s various contentions regarding his fear of returning to Peru under the current Garcia administration, finding that fear was “not supported by the record.” Appendix at 3. While Sanez seeks to fault the BIA for failing to mention each piece of record evidence that he finds relevant to his case, due process does not require the BIA to offer such a detailed explication of its reasoning. See, e.g., Myat Thu v. Att’y Gen., 510 F.3d 405, 416 n. 16 (3d Cir.2007) (observing that “[cjonsideration of all evidence does not require comment on all evidence”).[3] In short, we are satisfied that *258 the BIA rendered the requisite individualized determination.
Moreover, substantial evidence supports the decision to deny withholding of removal. To prevail on this claim, Sanez had to show that he suffered past persecution on the basis of a protected ground, or that such persecution is more likely than not to occur in the future. See Kaita v. Att’y Gen., 522 F.3d 288, 296 (3d Cir.2008). With regard to past persecution, Sanez testified that he received death threats by telephone, that he was assaulted at a rally by Toledo supporters but not injured, and that he was fired from Frecuencia Latina and blacklisted after the station turned pro-Toledo. In addition, the evidence established that journalists have been interrogated and attacked in Peru, and that Winter, the former chairman of Frecuencia Latina, was tried and convicted for accepting bribes from the Fujimori government. This evidence does not compel a finding of past persecution.
While death threats can constitute persecution, such threats must be “so menacing as to cause significant actual suffering or harm.” Gomez-Zuluaga v. Att’y Gen., 527 F.3d 330, 341 (3d Cir.2008) (quotation marks omitted); see also Li v. Att’y Gen., 400 F.3d 157, 164 (3d Cir.2005) (explaining that “unfulfilled threats must be of a highly imminent and menacing nature in order to constitute persecution”). There is no evidence that Sanez suffered significant actual suffering or harm from the anonymous threats that he received. Similarly, the lone physical assault at the Toledo rally resulted in no actual harm or injury. Finally, Sanez failed to show that his firing and blacklisting engendered economic restrictions so severe as to constitute persecution, particularly in light of his testimony that he could find another job in Peru (albeit not a job in television news reporting). Cf. Li, 400 F.3d at 168 (explaining that “deliberate imposition of severe economic disadvantage ... may constitute persecution” if it threatens life or freedom). Even viewed collectively, this evidence does not compel the conclusion that Sanez suffered persecution in the past.[4]
As to future persecution, Sanez testified that his former associates have been persecuted, and he argues that, contrary to the BIA’s finding, he is similarly situated to journalists who have been persecuted in Peru, making it likely that he will be persecuted upon return. Substantial evidence, however, supports the BIA’s conclusion that Sanez is not similarly situated to journalists who have been persecuted. Sanez was never arrested, interrogated, or persecuted while in Peru, and he has not established the existence of a current threat of persecution faced by journalists who, like Sanez, were Fujimori supporters. Furthermore, as the BIA noted, Winter was convicted of public corruption in Peru, and, despite Sanez’s unsupported suggestion to the contrary, the evidence in the record does not compel a conclusion that Winter’s conviction was a form of persecution rather than a proper prosecution for *259 unlawful conduct. In addition, Braschi has since visited Peru, and the authorities have not questioned or detained her.[5] On this record, we cannot disturb the BIA’s finding that Sanez failed to establish grounds for withholding of removal.
Finally, Sanez argues that the BIA erred in denying relief under the CAT because he believes that he likely will be tortured at the hands of the government, particularly when considering the evidence of violence against journalists. Petitioner’s Br. at 34-35. To prevail on his CAT claim, Sanez had to show, through objective evidence, that it is more likely than not that he will be tortured in Peru. See 8 C.F.R. § 208.16(c)(2); Sevoian v. Ashcroft, 290 F.3d 166, 174-75 (3d Cir.2002). Torture is defined as the intentional infliction of severe pain or suffering “by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.” 8 C.F.R. § 208.18(a)(1). “[I]n order to obtain relief under the CAT, a petitioner must show that the alleged torturous acts by the government will be specifically intended, to inflict severe physical or mental pain or suffering.” Pierre v. Att’y Gen., 528 F.3d 180, 186 (3d Cir.2008) (en banc) (quotation marks omitted).
Sanez relies upon the 2005 State Department Country Report on Human Rights Practices, noting evidence cited in the Report of the torture of detainees in Peru, as well as acts of violence against journalists. Petitioner’s Br. at 35. Sanez has not, however, established that he personally faces a likelihood of being detained or tortured by government officials upon his return. As the BIA noted, “the record does not indicate any ongoing threats to Fujimori supporters.” Appendix at 3. In addition, the evidence in the Country Report does not compel the conclusion that the current Peruvian government is likely to torture Sanez.
III.
For the foregoing reasons, we will deny the petition for review.

. The IJ characterized Frecuencia Latina as "formerly a financial puppet of Fujimori.'' Appendix at 118. Sanez himself acknowledged that the station illegally took money from the government in exchange for portraying Fujimori in a positive light and attacking opponents of the administration. Id. at 230-31.

. We review de novo the question whether Sanez was denied due process. See Ezeagwuna v. Ashcroft, 325 F.3d 396, 405 (3d Cir.2003).

. Moreover, the BIA made express reference in its decision to much of the evidence that Sanez complains was overlooked. For example, Sanez asserts that the BIA "failed to discuss why [Sanez] himself would differ from opposition journalists discussed in th[e] objective evidence” of record regarding the mistreatment of opposition journalists in Peru. *258 Petitioner’s Br. at 20. The BIA, however, expressly found that the IJ “correctly determined that [Sanez] is not similarly situated to other journalists who, as described in the record, have suffered harassment and intimidation by the public and government.” Appendix at 3. This statement of its reasoning was plainly sufficient to survive due process scrutiny.

. As we have explained, persecution includes "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom,” but it “does not encompass all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional.” Fatin v. INS, 12 F.3d 1233, 1240 (3d Cir.1993). The events of which Sanez complains simply do not meet this narrow definition.

. Sanez suggests that Braschi’s relative prominence has insulated her from harm while visiting Peru, whereas he would have no such protection because he is a relatively obscure figure. Petitioner’s Br. at 30-31. But Bras-chi’s husband, Winter, was himself a prominent figure, and he was tried and convicted, which at least arguably suggests that prominence is not what has protected Braschi from harm.