NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No: 20-2323
_____

MANUEL LAPO, Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA
_____

On Petition for Review of an Order of the Board of Immigration Appeals
(A205-754-946)
Immigration Judge: Jason L. Pope
_____

Submitted Under Third Circuit LAR 34.1(a)
January 26, 2021

Before:   JORDAN, MATEY, *Circuit Judges*,
and HORAN,* *District Judge*.

(Opinion Filed:  February 8, 2021)
_____

OPINION**
_____

---

* Honorable Marilyn Horan, United States District Judge for the Western District of Pennsylvania, sitting by designation.

** This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

HORAN, *District Judge*.

Manuel Lapo petitions for review of a decision by the Board of Immigration Appeals ("Board") dismissing his appeal of an Immigration Judge's ("IJ") denial of his application for cancellation of removal under 8 U.S.C. § 1229(b)(1). For the reasons that follow, we lack jurisdiction to review the Board's Decision and will dismiss the petition for review.

## I. BACKGROUND

Manuel Lapo is a native and citizen of Ecuador. He has continuously resided in the United States since his April 2001 unlawful entry. Until his detention, Mr. Lapo lived with his partner, Ms. Nancy Garcia, and their two United States citizen children, a seventeen-year-old daughter and an eleven-year-old son.

On October 4, 2013, the Department of Homeland Security ("DHS") issued a Notice to Appear, charging Mr. Lapo with removability as an alien present in the United States without being admitted or paroled under 8 U.S.C. § 1182(a)(6)(A)(i). On September 28, 2016, Mr. Lapo entered a counseled admission to removability and thereafter requested cancellation of removal.

A hearing on Mr. Lapo's application was held before the IJ on January 17, 2020. At the start of the hearing, Mr. Lapo's counsel requested that additional medical evidence be accepted into the record. Although the request was submitted late, the evidence was accepted by the IJ and admitted into the record, without objection, as Exhibit 5. Exhibit 5 consists of 10 pages. The first page is a letter from Dr. Luis Garay, pediatrician for Mr. Lapo's daughter, Ashley Lapo. This letter discusses Ashley's medical history, including

2

her gastrointestinal and asthma conditions, recommended treatments, and prognosis. Pages 2 through 9 appear to be notes from eight individual office visits between 2008 and 2019. The tenth page is Dr. Garay's resume.

In addition to the filings of record, exhibits, and presentations of counsel, Mr. Lapo and Ms. Garcia each testified about their children's medical, mental, and emotional health issues, and the impact Mr. Lapo's detention has had on Ms. Garcia and the children. They both also testified about the children's current mental, emotional, and educational difficulties due to Mr. Lapo's detention, and about the children's expected future suffering when Mr. Lapo is deported. In addition, both parents testified as to financial and child-care difficulties resulting from Mr. Lapo's detention, and that such difficulties would continue when Mr. Lapo is deported. Mr. Lapo testified about the impact his detention has had on Ms. Garcia. He also testified that he is a business owner. Mr. Lapo testified about his criminal history. Ms. Garcia testified about the impact Mr. Lapo's detention has had on her. She also testified about the number of hours she works at her job, and the need to work as much as possible in order to make up for Mr. Lapo's lack of income during detention.

At the conclusion of the hearing, the IJ denied Mr. Lapo's application for cancellation of removal, finding that the evidence did not establish exceptional and extremely unusual hardship for Mr. Lapo's qualifying United States citizen children. In presenting his Decision, the IJ discussed much of the record evidence relevant to the issue of exceptional and extremely unusual hardship for Mr. Lapo's children. He specifically mentioned many of Mr. Lapo's and Ms. Garcia's concerns presented during

3

the hearing. He also stated that all evidence in the record was considered. He summarized Mr. Lapo's and Ms. Garcia's testimony and found both witnesses credible. The IJ determined that Mr. Lapo did not prove the necessary element of exceptional and extremely unusual hardship for his qualifying children; therefore, Mr. Lapo was not eligible for cancellation of removal. As such, the IJ stated that he would not address or render any finding on the issue of Mr. Lapo's good moral character or make any determination about whether or not to exercise his discretion to grant cancellation of removal.

Mr. Lapo appealed the IJ's Decision to the Board. In his appeal, Mr. Lapo argued that the IJ violated his due process rights when the IJ accepted, but did not consider, the medical evidence from Exhibit 5. Mr. Lapo also argued that the IJ's findings of fact were insufficient and legally flawed and that the IJ applied a "heightened standard" when considering Mr. Lapo's son's medical hardships.

In its Decision, the Board confirmed that it was conducting a de novo review and specifically cited to the record from the IJ hearing and to the IJ's Decision. The Board discussed Mr. Lapo's arguments that the IJ's findings of fact in relation to the children's health and emotional concerns were insufficient. The Board referenced Ms. Garcia's immigration status and Mr. Lapo's business ownership. The Board also considered whether the IJ applied a heightened standard in considering his son's medical hardships. The Board determined that the IJ "considered the economic, educational, medical and emotional hardship that his removal would have upon his two United States citizen children." (Administrative Record ("AR") 4.) The Board opined that Mr. Lapo's

4

arguments concerned challenges to the weight afforded to certain evidence or to the fact-finding determinations of the IJ, which did not merit remand.  The Board found no clear error in the IJ's findings of fact.  The Board found no error in the IJ's finding that Mr. Lapo did not carry his burden of proof that his "removal would result in exceptional and extremely unusual hardship to his spouse, parent or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence."  (AR 3 (citing 8 U.S.C. § 240A(b)(1)(D)).)  Further, the Board agreed with the IJ that Mr. Lapo had not met his burden to demonstrate that his qualifying relative children would suffer hardship that is substantially beyond that which would ordinarily be expected to result from a relative's removal from the United States.  As such, the Board dismissed Mr. Lapo's appeal.

As regards Mr. Lapo's assertion of a due process violation, the Board stated that, "in order to prevail on a due process claim, an alien must show substantial prejudice and that the due process violation affected the outcome of his proceeding."  (AR 4-5 (citing Serrano-Alberto v. Att'y Gen., 859 F.3d 208, 213 (3d Cir. 2017))).)  The Board acknowledged that "the respondent contends the Immigration Judge violated his due process rights by accepting the late evidence at the hearing on the merits and not considering the evidence in his decision."  (AR 4.)  The Board ruled that, for the reasons cited in its opinion, Mr. Lapo did not show substantial prejudice.  As such, Mr. Lapo did not prevail on his assertion of a constitutional due process violation.  The Board agreed with the IJ that Mr. Lapo did not meet his burden of proof to establish eligibility for cancellation of removal.

5

Mr. Lapo timely filed this petition for review. Mr. Lapo raises the same arguments concerning the IJ's constitutional and fact-finding errors that he presented to the Board. In addition, he asserts that the Board compounded said errors by engaging in its own fact-finding and by not remanding to the IJ.

## II. DISCUSSION

### A. The Court Lacks Jurisdiction Over the Board's Discretionary Determination

The Board has jurisdiction over the IJ's Decision in a removal proceeding. 8 C.F.R. § 1003.1(b)(3). We generally have jurisdiction to review the Board's final order of removal pursuant to 8 U.S.C. § 1252(a). However, we lack jurisdiction over the Board's discretionary decisions in cancellation of removal determinations. 8 U.S.C. § 1252(a)(2)(B)(i); Mejia-Castanon v. Att'y Gen., 931 F.3d 224, 232 (3d Cir. 2019). The determination of whether an applicant has established "exceptional and extremely unusual hardship" pursuant to 8 U.S.C. § 1229b(b)(1)(D), is discretionary and therefore beyond our jurisdictional purview. Pareja v. Att'y Gen., 615 F.3d 180, 188 (3d Cir. 2010). Here, the Board's determination, that Mr. Lapo failed to establish that his qualifying children will suffer "exceptional and extremely unusual hardship," is a discretionary decision, which is beyond our jurisdiction to review. 8 U.S.C. § 1229b(b)(1)(D). Therefore, we lack jurisdiction for appellate review of such Decision.

### B. There Are No Colorable Constitutional Questions or Errors of Law to Confer Jurisdiction

While we lack jurisdiction over the Agency's discretionary determination, we may exercise jurisdiction limited to "review of constitutional claims or questions of law." 8

U.S.C. § 1252(a)(2)(D). "[W]here the BIA is alleged to have made a hardship determination based on 'an erroneous legal standard' or 'on fact-finding which is flawed by an error of law,' our jurisdiction to review that determination is secure." Pareja, 615 F.3d at 188 (quoting Mendez v. Holder, 566 F.3d 316, 322 (2d Cir.2009)). In that regard, Mr. Lapo argues that we may exercise jurisdiction over his claims because the IJ violated his due process rights to a full hearing and because the IJ committed errors of law which were compounded by the Board. We review the Board's Decision, as the Board undertook a de novo review and issued its own decision on the merits. Kaplun v. Att'y Gen., 602 F.3d 260, 265 (3d Cir. 2010). After thoroughly reviewing the Board's Decision, we conclude that there are no colorable constitutional claims or questions of law to invoke our jurisdiction.

### 1. Cancellation of Removal

To be statutorily eligible for cancellation of removal the applicant must demonstrate: (1) physical presence in the United States for a continuous period of not less than ten years immediately preceding the date of application; (2) good moral character for the ten-year "continuous presence" period; (3) no convictions of an offense under 8 U.S.C. §§ 1182(a)(2), 1227(a)(2), or 1227(a)(3); and (4) that removal would result in exceptional and extremely unusual hardship to the alien spouse, parent, or child who is a citizen of the United States or a lawful permanent resident. 8 U.S.C. § 1229b(b)(1)(A)-(D). If an applicant establishes that he is statutorily eligible for cancellation, the IJ retains the discretion to grant or deny relief. Pareja, 615 F.3d at 186 ("[I]f the alien meets her burden of establishing eligibility for cancellation of removal, the Attorney General

7

may, in the exercise of his discretion, cancel the alien's removal[.]").  While the record below contains evidence germane to all of these elements, the discussions herein focus upon Mr. Lapo's petition for review of the decision to deny his application for cancellation of removal based upon findings of no "exceptional and extremely unusual hardship" to his two United States citizen children if he were removed.

### 2. Mr. Lapo's Due Process Rights Were Not Violated

Mr. Lapo's arguments center upon his assertion that the IJ failed to review Exhibit 5 in making his Decision and thereby violated his right to due process and substantially prejudiced him.  Serrano-Alberto, 859 F.3d at 213.  First, Mr. Lapo has the burden to prove his contention that the IJ did not consider Exhibit 5 in his Decision.  Mr. Lapo did not establish that the IJ did not review Exhibit 5.  The record here shows that the IJ accepted the late-filed Exhibit 5 into the record.  Mr. Lapo argues that the record of the hearing before the IJ demonstrates that the IJ had no time to review Exhibit 5 prior to issuing his Oral Decision denying cancellation of removal.  The content of Exhibit 5 is not voluminous.  The salient information could have been easily gleaned by the IJ throughout the course of the approximately three-hour hearing and the short break.  Further, the IJ referenced Exhibit 5 and its contents during the hearing.  During cross examination of Mr. Lapo, a question arose concerning medical proof of the children's hospitalizations prompting the following discussion:

> **MR. ANTONI TO MR. LAPO**
> Sir, did you submit any of these medical records from your children's hospitalizations?

> **MR. LAPO TO MR. ANTONI**

8

Yes. The doctor that takes care of them, he has all the reports.

**MR. ANTONI TO MR. LAPO**
All right. But you didn't submit them to the Immigration Court. Correct?

**MR. LAPO TO MR. ANTONI**
Yes. I have some proofs over there regarding my children, regarding their issues with the stomach.

**JUDGE TO MR. ANTONI**
There's been some medical evidence submitted, Mr. Antoni, just -

**MR. ANTONI TO JUDGE**
Yes. I -

**JUDGE TO MR. ANTONI**
- at Exhibit 5. But it may not be specifically related to hospitalizations.

**MR. ANTONI TO JUDGE**
I don't believe it was.

**JUDGE TO MR. ANTONI**
Dr. Garay's report.

**MR. ANTONI TO JUDGE**
I did see the medical evidence, your honor, yes

(AR 163-64.)  Furthermore, during his Oral Decision, the IJ acknowledged that he was not the original judge for this matter, but explained that "this court[] thoroughly reviewed the record of these proceedings to familiarize itself with the record pursuant to the regulations."  (AR 63.)  He also expressly referenced Exhibit 5 as part of the evidentiary record and stated that he "considered all evidence in the record, even if not explicitly mentioned in the decision."  (AR 63.)  Accordingly, the record does not support Mr. Lapo's contention that the IJ did not consider Exhibit 5.

Mr. Lapo also argues that the Board, in its Decision, conceded that the IJ failed to review Exhibit 5 and that the Board also considered such failure to be a due process violation. A closer reading of the Board's Decision does not support such argument or conclusion. The Board acknowledged that "the respondent contends the Immigration Judge violated his due process rights by accepting the late evidence at the hearing on the merits and not considering the evidence in his decision." (AR 4.) Beyond that acknowledgement, the Board did not discuss or make any express findings as to the merits of such contention. What the Board did do was state the relevant law that, "in order to prevail on a due process claim, an alien must show substantial prejudice and that the due process violation affected the outcome of his proceedings." (AR 4-5.) Then, having identified the law and Mr. Lapo's burden to prove substantial prejudice as a result of his contended due process violation, the Board ruled that, for the reasons cited in its opinion, Mr. Lapo did not show any substantial prejudice. The Board did not opine in any respect as to whether or not there was a due process violation. Such ruling was unnecessary, because, absent a showing of substantial prejudice, no redressable violation occurred. Finally, the Board agreed with the IJ that Mr. Lapo did not meet his burden of proof to establish eligibility for cancellation of removal. There is no colorable claim of a constitutional violation to confer our jurisdiction over this petition.

### 3.    The Board Did Not Commit Errors of Law

Mr. Lapo next argues that the IJ's failure to review Exhibit 5 was an error of law that deprived the Board of a basis for meaningful appellate review. He further argues that the Board committed an error of law, because it did not remand the proceeding to the IJ

for further fact-finding related to Exhibit 5. Alternatively, Mr. Lapo argues that, assuming the Board considered the Exhibit 5 evidence, and that the IJ did not, the Board committed an error of law, because it impermissibly engaged in fact-finding.

To succeed in these arguments, Mr. Lapo would need to first establish that the IJ did not review or consider Exhibit 5 in his Decision. The record does not support that Mr. Lapo has established such. As discussed above, the IJ admitted Exhibit 5 into the evidentiary record, he referred to Exhibit 5 during the hearing and in his Decision, and the Board also referenced Exhibit 5 in its Decision. Further, "Agency action is entitled to a presumption of regularity, and it is the petitioner's burden to show that the Board did not review the record when it considered the appeal." Kamara v. Att'y Gen., 420 F.3d 202, 212 (3d Cir. 2005) (citing Abdulai v. Ashcroft, 239 F.3d 542, 550–51 (3d Cir. 2001)). While the Agency may not "ignore evidence favorable to the alien," it is not required to "discuss every piece of evidence" mentioned by an applicant, Huang v. Att'y Gen., 620 F.3d 372, 388 (3d Cir. 2010), nor are they required to "write an exegesis on every contention." Sevoian v. Ashcroft, 290 F.3d 166, 178 (3d Cir. 2002) (quoting Mansour v. I.N.S., 230 F.3d 902, 908 (7th Cir. 2000)). Given the record, and the presumption of regularity afforded to Agency proceedings, we presume that the IJ reviewed Exhibit 5 as evidence in the record and considered it in reaching his Decision.

The instant case is distinguishable from Mendez v. Holder, which is relied upon by Mr. Lapo. 566 F.3d 316 (2d Cir. 2009). In Mendez, the Court concluded that it had jurisdiction because the IJ's Decision was flawed as a matter of law in that "facts important to the subtle determination of 'exceptional and extremely unusual hardship'

11

have been totally overlooked and others have been seriously mischaracterized." Id. at 323. There is no evidence that the IJ in this case overlooked or seriously mischaracterized evidence. Accordingly, the IJ committed no error of law.

Turning to the Board's Decision, the Board is required "only to show that it has reviewed the record and grasped the movant's claims." Sevoian, 290 F.3d at 178. At a minimum, the Board's Decision must provide "sufficient indicia" that the Board made an individualized determination of Mr. Lapo's interest. Abdulai, 239 F.3d at 550. Here, the Board summarized the pertinent evidence with supporting citations to the IJ's Decision and the hearing transcript and Exhibits, including Exhibit 5. In its de novo review, the Board recounted Mr. Lapo's contentions of error on appeal and assessed them in context with the record and the IJ's Decision. In addition, the Board determined that the IJ "considered the economic, educational, medical, and emotional hardship that [Mr. Lapo's] removal would have upon his two United States citizen children." (AR 4.) The Board cited the IJ's findings and discussion regarding the son's medical issues; the daughter's gastritis, anxiety, depression, and difficulties with school attendance; Ms. Garcia's employment; potential support from family members; and the children's dependence upon Ms. Garcia for emotional support. We conclude that the Board's Decision provides the requisite sufficient indicia that it made an individualized determination and also reflects that the Board "reviewed the record and grasped [Mr. Lapo's] claims." Sevoian, 290 F.3d at 178.

As regards Mr. Lapo's argument that the Board engaged in improper fact-finding to supplement the IJ's insufficient findings, the record does not support such conclusion.

As discussed above, the IJ considered the full record and issued sufficient findings to support his Decision.  The Board's de novo review confirmed the same.  There was no improper fact-finding and no error of law in the Board's Decision.  There is no basis to confer jurisdiction in this case.

### III.  CONCLUSION

Therefore, there being no colorable constitutional claim and no error of law, we lack jurisdiction over the Board's discretionary determination.  Accordingly, we will dismiss the petition for review.